GREER v ADVANTAGE HEALTH

Docket No. 312655. Submitted January 8, 2014, at Grand Rapids. Decided May 13, 2014, at 9:00 a.m. Leave to appeal granted, 497 Mich ___.

Makenzie Greer, a minor; her father, Kenneth Greer, acting individually and as her conservator; and her mother, Elizabeth Greer, brought an action in the Kent Circuit Court against Advantage Health; Anita Avery, M.D.; Trinity Health Michigan, doing business as St. Mary's Hospital; and Kristina Mixer, M.D., alleging medical malpractice during Elizabeth's delivery of Makenzie. Before trial, plaintiffs' claims against Mixer were dismissed, and plaintiffs reached a settlement with St. Mary's hospital. The settlement did not differentiate between plaintiffs' claims for damages involving the personal injuries of Elizabeth and Mackenzie and Kenneth's claims for Makenzie's medical expenses and loss of consortium. At trial, plaintiffs introduced evidence of invoices totaling $425,533.75 for medical services. The jury returned a verdict in favor of Makenzie for past medical care of $425,533.75, future medical and attendant care, and future pain, suffering, and disability. The jury returned a verdict of no cause of action with respect to the claims asserted by Makenzie's parents. Defendants moved to set off the entire amount that St. Mary's Hospital had paid to settle plaintiffs' claims and to reduce the award for past medical expenses to the amount that insurance actually paid and for which there existed a lien for reimbursement. The court, James R. Redford, J., denied the motion to reduce the award for past medical expenses and granted only a partial setoff of the settlement, ruling that it would allow a setoff of ⅓ of the $600,000 settlement, which, according to the court, represented that portion of the settlement paid in exchange for the release of liability for Makenzie's injuries. After making adjustments to the jury verdict consistent with its rulings, the court entered judgment in favor of Kenneth, as Makenzie's conservator, in the amount of $1,058,825.56. The court denied defendants' motion for reconsideration. Defendants appealed.

The Court of Appeals *held*:

1. In general, if an action includes a medical malpractice claim and the plaintiffs are determined to be without fault, as in this

case, the liability of each defendant is joint and several, and the common-law setoff rule applies. Under the common-law setoff rule, when a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his or her potential liability by paying a lump sum in exchange for a release and a judgment is subsequently entered against the nonsettling tortfeasor, the judgment is reduced pro tanto by the settlement amount. By assigning ⅓ of the settlement to the claims of each plaintiff, the trial court failed to fully apply the principle of setoff that for one injury there may be a single recovery. Plaintiffs collectively settled all their claims arising out of a single instance of malpractice against a jointly liable tortfeasor for a single undifferentiated lump sum. After trial against the nonsettling defendants, the jury determined the value of all plaintiffs' claims. To ensure that plaintiffs are fully—but not overly—compensated for all their claims, the entire settlement had to be offset against the amount that the jury determined represented plaintiffs' collective damages. There was no basis in the settlement agreement between plaintiffs and St. Mary's Hospital, or in the jury's verdict, to allocate any portion of St. Mary's payment to injuries other than those of Makenzie.

2. Under the common-law collateral source rule, the introduction of evidence of other insurance coverage for the purpose of mitigating damages is barred and the recovery of damages from a tortfeasor is not reduced by the plaintiff's receipt of money in compensation for his or her injuries from other sources. MCL 600.6303 modifies the common-law rule by permitting the presentation of evidence to a trial court, after the verdict but before judgment, to show that a plaintiff's claimed expense or loss was paid or is payable, in whole or in part, by a collateral source. And, if so, the statute requires that the court reduce the portion of the judgment that represents damages paid or payable by the collateral source. As defined in § 6303, the term "collateral source" includes benefits received or receivable from an insurance policy. In this case, two insurers paid, in whole or in part, the expense of medical care that plaintiffs sought in a personal injury action and for which plaintiffs obtained a favorable verdict, and insurance discounts were provided that reduced the amount of medical expenses that plaintiffs would otherwise have been responsible to pay. Both the cash payments and the insurance discounts fit within the basic definition of a collateral source because they constituted benefits received or receivable from an insurance policy. Under MCL 600.6303(4), however, the term "collateral source" does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien

against the proceeds of a recovery by a plaintiff in a civil action for damages if the contractual lien has been exercised under MCL 600.6303(3). Both the cash payments and the insurance discounts were benefits paid or payable under the exclusionary language of § 6303(4). The words "paid" and "payable" derive from the word "pay," which means to discharge or settle a debt, obligation, etc., as by transferring money or goods, or by doing something. The insurance discounts were used, along with the cash payments, to settle plaintiffs' debts to their healthcare providers. The insurance companies that discharged plaintiffs' medical expenses through cash payments and insurance discounts were entitled by contract to a lien against the proceeds of plaintiffs' civil action and exercised that lien under § 6303(3), compelling the conclusion that the cash payments and the insurance discounts were excluded under § 6303(4) as collateral source benefits. Accordingly, the trial court correctly denied defendants' motion to reduce the amount of the jury's award by the amount of the insurance discounts.

Trial court's collateral-source ruling affirmed; trial court's ruling regarding common-law setoff reversed; case remanded for entry of an amended judgment.

RONAYNE KRAUSE, J., concurring, agreed that the trial court correctly excluded the entirety of plaintiffs' insurance discounts under the collateral source statute and that the trial court erroneously set off only ⅓ of the settlement amount, but disagreed with the majority's conclusion that the trial court's setoff error violated the principle that plaintiffs should be compensated fully but only once for a given injury. The court attempted to fulfill the principle of compensating fully but only once for an injury, but in doing so impermissibly rewrote plaintiffs' settlement agreement with St. Mary's Hospital because the settlement agreement did not allocate the settlement among plaintiffs' injuries.

1. NEGLIGENCE — MEDICAL MALPRACTICE — COMMON-LAW SETOFF RULE.

In general, if an action includes a medical malpractice claim and the plaintiffs are determined to be without fault, the liability of each defendant is joint and several, and the common-law setoff rule applies; under the common-law setoff rule, when a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his or her potential liability by paying a lump sum in exchange for a release and a judgment is subsequently entered against the nonsettling tortfeasor, the judgment is reduced pro tanto by the settlement amount; when plaintiffs collectively settle all their claims arising out of a single instance of malpractice against a jointly liable tortfeasor for a single undifferentiated lump

sum, to ensure that plaintiffs are fully—but not overly—compensated for all their claims, the entire settlement must be offset against the amount that a jury in a subsequent trial involving the nonsettling defendants determines represents plaintiffs' collective damages.

2. NEGLIGENCE — MEDICAL MALPRACTICE — RECOVERY — COLLATERAL SOURCES — INSURANCE DISCOUNTS.

Under MCL 600.6303, evidence may be presented to a trial court, after the verdict but before judgment, to show that a plaintiff's claimed expense or loss was paid or is payable, in whole or in part, by a collateral source, and, if so, the statute requires that the court reduce the portion of the judgment that represents damages paid or payable by the collateral source; as defined in § 6303, the term "collateral source" includes benefits received or receivable from an insurance policy, but it does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages if the contractual lien has been exercised under MCL 600.6303(3); insurance discounts are generally benefits paid or payable by a legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages and, therefore, insurance discounts are not collateral source benefits if the contractual lien has been exercised under MCL 600.6303(3).

*Law Offices of William J. Waddell* (by *William J. Waddell*) and *Jonathan S. Damon* for Makenzie Greer, Kenneth Greer, and Elizabeth Greer.

*Rhoades McKee, PC* (by *Steven C. Berry*), for Advantage Health and Anita R. Avery, M.D.

Before: HOEKSTRA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

MARKEY, J. In this medical malpractice case, nonsettling defendants, Advantage Health and Anita R. Avery, M.D. (defendants), appeal by right the trial court's ruling applying only a portion of the amount a potentially jointly liable codefendant paid to settle plaintiffs' claims as a setoff against a jury award. Defendants also

appeal the trial court's failure to reduce the amount of
the jury's award for past economic damages by the
amount medical bills were reduced pursuant to the
providers' agreement with insurance companies (i.e.,
the insurance discount). We affirm the trial court's
collateral source ruling, but we reverse and remand for
entry of an amended judgment consistent with this
opinion regarding the application of common-law setoff.

## I. SUMMARY OF PERTINENT FACTS

This case arises out of the birth of Makenzie Greer.
Plaintiffs asserted joint and several claims of negligence
against all defendants attending Elizabeth Greer dur-
ing the delivery of Makenzie, which resulted in injury to
both Elizabeth (ruptured uterus) and Makenzie (hy-
poxic brain injury, respiratory depression, metabolic
acidosis, permanent brain damage, and blindness). Be-
fore trial, defendant St. Mary's Hospital settled all
plaintiffs' claims, including those of Elizabeth's hus-
band, Kenneth Greer, for $600,000.[1] The settlement did
not differentiate between plaintiffs' claims for damages
that included the personal injuries of Elizabeth and
Makenzie and Kenneth's claims for Makenzie's medical
expenses and loss of consortium.

At trial, plaintiffs introduced evidence of medical
services invoices for $425,533.75. Defense counsel ac-
knowledged the accuracy of the medical bills but con-
tended plaintiffs could recover only the amounts the
insurance companies actually paid and for which they
asserted a lien for reimbursement. The jury returned a
verdict in favor of Makenzie for past medical care
(economic damages) of $425,533.75, future medical and

---

[1] Plaintiffs' claim against Dr. Kristina Mixer, an intern employed by St.
Mary's Hospital, was dismissed without prejudice early in the litigation
by stipulation of the parties.

attendant care (economic damages), and future pain, suffering and disability (noneconomic damages); however, it awarded her no damages for past pain and suffering. The jury found no cause of action with respect to the claims asserted by Elizabeth and Kenneth.

Before entry of judgment, defendants moved the trial court to reduce the award of future damages to present value pursuant to MCL 600.6306,[2] to setoff the entire amount ($600,000) that St. Mary's Hospital paid to settle plaintiffs' claims, and to reduce the award for past medical expenses to the amounts that insurance actually paid, as opposed to billed, for which there existed a lien for reimbursement. The trial court issued an opinion and order, granting in part and denying in part defendants' motion. The trial court opined, relying on *Zdrojewski v Murphy*, 254 Mich App 50; 657 NW2d 721 (2002), that no reduction of the jury's award for past medical expenses was warranted because the insurance companies that made payments to the medical providers (Aetna and Priority Health) asserted contractual subrogation liens with respect to the proceeds of any judgment plaintiffs might collect.

With respect to the amount St. Mary's Hospital paid to settle plaintiffs' claims, the trial court recognized the common-law rule that "where a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount." *Thick v Lapeer Metal Prod*, 419 Mich 342, 348 n 1; 353 NW2d 464 (1984) (opinion by BOYLE, J.). But

---

[2] The trial court granted this part of defendants' motion, and it is not at issue on appeal.

the trial court declined to fully apply common-law setoff. The court reasoned that it would be manifestly unjust to apply the full settlement to offset the jury award for Makenzie because the St. Mary's settlement payment was for the claims of all three plaintiffs and because the jury returned a verdict of no cause of action as to Kenneth's and Elizabeth's separate claims, which were included in the St. Mary's settlement payment. The court, therefore, ruled it would allow a setoff of "$162,058.11 or ⅓ of the settlement amount . . . which represents that portion of the settlement paid in exchange for release of liability for Makenzie's injuries."

Defendants filed a motion for reconsideration, which the trial court denied in an opinion and order. The trial court reaffirmed its ruling regarding past medical expenses, opining that defendants failed to prove this claim. The trial court also reaffirmed its ruling regarding setoff and distinguished the case of *Velez v Tuma*, 492 Mich 1; 821 NW2d 432 (2012), on which defendants relied. The trial court noted that *Velez* involved a single plaintiff whereas the present case concerned a settlement with three plaintiffs. Again, the trial court reasoned that the settlement was for all three plaintiffs, but the jury awarded damages to only one plaintiff. The trial court also speculated that the jury would not have returned a verdict of no cause of action as to Elizabeth and Kenneth if the case had proceeded to trial against St. Mary's Hospital. The trial court further explained its ruling:

> The Court finds, factually, that this settlement allocation was for the three plaintiffs equally and that the only reasonable, rational and record based way to allocate the amount to be set off against the verdict was equally in one-third increments allowing the Defendants first a $200,000 setoff; which necessarily had to be reduced by the one-third amount of medical expense liens paid out of the settlement amount.

Thereafter, after making calculations regarding the jury verdict consistent with its rulings, the trial court entered judgment in favor of Kenneth as conservator for Makenzie against defendants in the amount of $1,058,825.56. The court entered a separate order awarding plaintiffs' their costs of $32,393.80 as prevailing parties. Defendants now appeal by right the trial court's rulings applying only a partial setoff for the St. Mary's Hospital settlement payment and declining to reduce the jury's award for past economic damages to the amount insurance companies actually paid providers to satisfy plaintiffs' medical bills.

## II. ANALYSIS

### A. PRESERVATION AND STANDARD OF REVIEW

Each issue on appeal has been preserved because it was raised before and decided by the trial court. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). We review both issues de novo as they present questions of law regarding the interpretation of statutes and the application of the common law. *Velez*, 492 Mich at 10-11.

### B. COMMON-LAW SETOFF

Under the common-law rule of setoff among jointly liable tort defendants "where a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount." *Thick*, 419 Mich at 348 n 1 (opinion by BOYLE, J.). See also *Velez*, 492 Mich at 14 n 27, and *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich

App 245, 250; 660 NW2d 344 (2003). We conclude that the trial court erred in applying common-law setoff in the present case because the $600,000 St. Mary's Hospital paid to *all* plaintiffs to settle *all* plaintiffs' claims arising out of the alleged malpractice of the codefendants attending to the birth of Makenzie must reduce *pro tanto* the amount of the jury verdict, after any statutory reductions, *Velez*, 492 Mich at 23, against the jointly liable defendants regarding *all* plaintiffs' identical malpractice claims. Moreover, we can find no basis in the release and settlement agreement between plaintiffs and St. Mary's Hospital, or in the jury's verdict, to allocate any portion of the St. Mary's payment to injuries other than those of Makenzie, nor do we have the ability to alter the settlement agreement, which is, of course, a contract. Consequently, we reverse the trial court's decision regarding setoff and remand for entry of an amended judgment.

Tort reform legislation in 1995 replaced joint and several liability among defendants for most torts with several liability on the basis of the proportion of each defendant's fault or "fair share" liability. MCL 600.2956; MCL 600.6304; *Markley*, 255 Mich App at 250, 253; *Smiley v Corrigan*, 248 Mich App 51, 53, 55; 638 NW2d 151 (2001). But the 1995 legislation retained joint and several liability for medical malpractice cases in which the plaintiff is without fault. In general, "[i]f an action includes a medical malpractice claim" and "[i]f the plaintiff is determined to be without fault . . . , the liability of each defendant is joint and several . . . ." MCL 600.6304(6)(a). In this case, it is undisputed that all plaintiffs were without fault. The 1995 legislation also repealed the statutory codification of the common-law rule of setoff among jointly liable tortfeasors. See MCL 600.2925d, as amended by 1995 PA 161; see also *Thick*, 419 Mich at 348 n 1; *Markley*, 255 Mich App at

254-255. The Court in *Markley* concluded "that the Legislature did not intend to allow recovery greater than the actual loss in joint and several liability cases when it deleted the relevant portion of § 2925d, but instead intended that common-law principles limiting a recovery to the actual loss would remain intact." *Markley*, 255 Mich App at 257. Thus, the Court held that "the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan." *Id*. Our Supreme Court in *Velez*, 492 Mich at 6, agreed that *Markley* was correct and clarified that "where the Legislature has retained principles of joint and several liability, the common-law setoff rule applies." The issue thus becomes the application of common-law setoff to the facts of this case.

This case arises out of medical services provided to Elizabeth while she was giving birth to Makenzie at St. Mary's Hospital. Dr. Mixer, employed by St. Mary's Hospital, and Dr. Avery, employed by Advantage Health, attended the birth. Kenneth, individually and as conservator of Makenzie, and Elizabeth, alleged that Makenzie suffered horrific, permanent injuries. Plaintiffs filed their complaint against the doctors alleging various acts of malpractice during the labor and delivery that occurred on September 27-28, 2008, and asserted that the corporate defendants were vicariously liable. Elizabeth asserted a claim for an injury to her uterus, scaring, disfigurement, and lost wages while caring for Makenzie. Kenneth claimed damages for his liability to pay past and future medical expenses for Makenzie and loss of consortium with respect to Elizabeth. Kenneth as conservator of Makenzie, also asserted claims on her behalf for pain, suffering, mental and physical disability, and pecuniary damages, including medical expenses, future care, and loss of earning

capacity. Thus, all Kenneth's claims were derivative of alleged injuries that either Elizabeth or Makenzie sustained during a single alleged incident of malpractice. It is undisputed that plaintiffs were not at fault for their claimed injuries and that the liability of all defendants would be joint and several. MCL 600.6304(6)(a); *Velez*, 492 Mich at 12-13.

Before trial, St. Mary's Hospital paid $600,000 to Elizabeth and to Kenneth, individually and as conservator of Makenzie, to settle "any and all claims demands, damages, actions, causes of action or suits of any kind or nature . . . as a result of an incident which occurred on or about September 28, 2008, including the subsequent medical treatment provided, Makenzie Greer, because of this incident." The receipt of the payment was a "full accord, satisfaction and settlement of *all claims* arising from the incident." The settlement agreement did not articulate in any way how the lump sum payment should be assigned to any particular plaintiff or to any particular claim or legal theory. Rather, the settlement payment was for "any and all claims" that all plaintiffs may have had arising from the incident that "occurred on or about September 28, 2008" and included "the subsequent medical treatment" of Makenzie. The settlement agreement expressly provided that it was "not to be construed as an admission of liability on the part of" any party covered by the release.[3] In sum, the settlement was a lump sum payment by an alleged jointly and severally liable tortfeasor to settle all claims of all plaintiffs arising out of the malpractice incident described in plaintiffs' complaint.

---

[3] It is unclear when plaintiffs dismissed their claims against Mixer, but as one of St. Mary's employees, she was covered by the release that St. Mary's Hospital obtained.

By assigning ⅓ of the St. Mary's settlement to each plaintiff's claims, the trial court failed to fully apply the principle of setoff that for one injury there may be a single recovery. *Velez*, 492 Mich at 12-13; *Markley*, 255 Mich App at 250-251. The trial court distinguished caselaw involving a single plaintiff, thus justifying parsing the settlement here, because several plaintiffs' claims were settled. On the facts of this case, this distinction is inapposite.

Plaintiffs brought their complaint against all defendants alleging a single count of malpractice concerning a single discrete incident, the birth of Makenzie. Because any liability of defendants was joint and several, plaintiffs were free to settle with some defendants and proceed to trial against other defendants. *Markley*, 255 Mich App at 251, citing *Verhoeks v Gillivan*, 244 Mich 367, 371; 221 NW 287 (1928). But for a single injury, plaintiffs could have only one recovery. *Markley*, 255 Mich App at 250-251. Plaintiffs might have been able, with St. Mary's agreement, to apportion the settlement among plaintiffs' separate claims. See, e.g., *Markley*, 255 Mich App at 248 (in which a joint tortfeasor's settlement was divided into an amount allocated to wrongful death and an amount allocated to pain and suffering). Plaintiffs here did not do so. Plaintiffs collectively settled *all* their claims against a jointly liable tortfeasor arising out of a single instance of malpractice involving Makenzie's birth for a single undifferentiated lump sum of $600,000. After trial against the nonsettling defendants on all the same claims, a jury determined the value of all plaintiffs' claims. To ensure that plaintiffs are fully but not overly compensated for *all* their claims, the entire St. Mary's settlement must be offset against the amount the jury determined represented plaintiffs' collective damages. *Markley*, 255 Mich App at 250-251. When there is a recovery "for an injury

identical in nature, time and place, that recovery must be deducted from [the plaintiffs'] other award." *Great Northern Packaging, Inc v Gen Tire & Rubber Co*, 154 Mich App 777, 781; 399 NW2d 408 (1986).

This reasoning is reinforced by our Supreme Court's decision in *Velez*, 492 Mich at 13, which noted that "[t]he term 'joint and several' liability, as used in MCL 600.6304(6)(a), is a technical legal term." It means when multiple tortfeasors cause " 'a *single or indivisible injury*, the injured party [may] either sue all tortfeasors jointly or he [may] sue any individual tortfeasor severally, and each individual tortfeasor [is] liable for the entire judgment . . . .' " *Id.* (citation omitted; alterations in original; emphasis added). In the context of the Court's discussion of the interplay between common-law setoff and statutory limitations on damages in medical malpractices cases, it is clear that the "single or indivisible injury" referred to is the allegation of malpractice. The damages flowing from the single injury—the malpractice—may be economic or noneconomic, past or future. See MCL 600.6306(3); *Velez*, 492 Mich at 18-19. "Inherent in the meaning of joint and several liability is the concept that a plaintiff's recovery is limited to one compensation for the single injury." *Velez*, 492 Mich at 13. Because in this case Makenzie had already received partial compensation for her malpractice injury, "application of the common-law setoff rule requires that codefendants' settlement be subtracted from the final judgment so that [she] does not receive more than a single recovery for her single injury." *Id.* at 23.

The *Velez* Court also discouraged what the trial court attempted in this case: apportionment of an indivisible lump-sum settlement into partial, severable settlements. The Court observed that when "a judgment

contains both economic and noneconomic damages, a circuit court's applying the setoff to the jury's verdict *before* application of the collateral source rule would have to determine how to allocate the settlement between economic and noneconomic damages." *Velez*, 492 Mich at 25. The Court reasoned such a practice could not be condoned because it would be contrary to MCL 600.1483, and it would discourage settlements among business-related defendants. *Id*. at 25-26. The Court further opined:

Additionally, in instances like the present, in which the composition of the settlement is unknown, circuit courts would be left to guess at how a settlement should be allocated. Requiring circuit courts to engage in this guesswork, from which a range of potential outcomes could result, unreasonably burdens them with a determination that they are, in the absence of any statutory guidance, ill-prepared to make. Our holding, on the other hand, that a circuit court must subtract the total settlement from the final judgment, creates no need to allocate the settlement proceeds between economic or noneconomic damages before applying the setoff. Rather, the settlement is treated as an aggregate award to be applied against the plaintiff's total actual loss, meaning the final judgment after application of the applicable statutory adjustments. [*Id*. at 26.]

Similarly, in this case, to avoid speculative apportionment of an undifferentiated lump-sum settlement paid by a jointly liable codefendant to settle more than one plaintiff's claim arising from a single alleged incident of malpractice, the entire settlement must offset the entire jury award to all plaintiffs. Further support for this conclusion is found by analogy to application of the noneconomic cap of MCL 600.1483(1), which provides in part that "the total amount of damages for noneconomic loss recoverable by *all plaintiffs*, resulting from the medical malpractice of *all defendants*, shall not exceed" a specified amount with certain exceptions.

(Emphasis added). See also *Velez*, 492 Mich at 17-18 (holding that the word "recoverable" in § 1483(1) necessarily "includes recovery through settlements, jury verdicts, or arbitration").

Finally, any necessary apportionment of the St. Mary's settlement among the three plaintiffs should be made in accordance with the fact-finders' determination. The jury determined that Kenneth's and Elizabeth's claims were valued at zero. Accordingly, if it were possible to apportion the undifferentiated lump-sum settlement, their portion should be valued at zero. That apportionment would result in setting off the entire St. Mary's settlement from damages that remain after applying the relevant statutory adjustments to arrive at the final judgment in favor of Makenzie's conservator. See *Velez*, 492 Mich at 26.

For the foregoing reasons, we reverse the trial court's ruling regarding setoff and remand for entry of an amended judgment consistent with this opinion.

### C. COLLATERAL SOURCE RULE OF MCL 600.6303

Defendants' argument that insurance discounts are collateral source payments under MCL 600.6303 has some merit. Specifically, such a discount falls within the definition of "collateral source" because such discount are "benefits received or receivable from an insurance policy" as set forth in MCL 600.6303(4). Nevertheless, because MCL 600.6303 is in derogation of the common law, it may not be extended beyond the meaning of its plain language. See *Velez*, 492 Mich at 11-12. Further, the statute must be read as a whole, and the last sentence of MCL 600.6303(4), on which plaintiffs rely, provides in pertinent part, that "[c]ollateral source does not include *benefits paid or payable* by a person . . . or other legal entity entitled by contract to a lien . . . *if the*

*contractual lien has been exercised . . . .*" (Emphasis added). The statute nowhere specifies that this exclusion from the statutory collateral source rule is limited to the amount of the lien exercised or the amount actually paid. In fact, the exclusion applies by its plain terms to all benefits "paid or payable" by a legal entity that timely asserts a contractual lien pursuant to MCL 600.6303(3). Thus, we affirm the trial court on this issue.

Whether, under MCL 600.6303, a discount on an incurred medical expense negotiated between medical services providers and health care insurers is a "collateral source" that may reduce a jury award for the medical expense presents a question of statutory interpretation. The principles of statutory construction to be used in resolving this question were articulated in *Velez*, 492 Mich at 16-17:

> Our function in construing statutory language is to effectuate the Legislature's intent. Plain and clear language is the best indicator of that intent, and such statutory language must be enforced as written. Further, a statute in derogation of the common law will not be construed to abrogate the common law by implication, but if there is any doubt, the statute is to be given the effect that makes the least change in the common law. [Citations omitted.]

MCL 600.6303 is in partial derogation of the common-law collateral source rule. That rule has both an evidentiary component—it "bars evidence of other insurance coverage when introduced for the purpose of mitigating damages," *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 58; 457 NW2d 637 (1990)—and a substantive component—it "provides that the recovery of damages from a tortfeasor is not reduced by the plaintiff's receipt of money in compensation for his injuries from other sources." *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d

181 (1984) (opinion by BRICKLEY, J.). MCL 600.6303(1) modifies the common-law collateral source rule by permitting the presentation of evidence to a trial court after the verdict but before judgment to show that a plaintiff's claimed "expense or loss was paid or is payable, in whole or in part, by a collateral source," and, if so, requires the trial court to "reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2)."[4] MCL 600.6303(3) provides that after a favorable verdict, a plaintiff or the plaintiff's attorney must notify potential lien claimants, who then have 20 days to assert their contractual right of subrogation. The heart of the issue centers on the definition of "collateral source" found in MCL 600.6304(4), which provides:

> As used in this section, "collateral source" means *benefits received or receivable from an insurance policy*; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. Collateral source does not include life insurance benefits or benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages. Collateral source *does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien* against the proceeds of a recovery by a plaintiff in a civil action for damages, *if the contractual lien has been exercised* pursuant to subsection (3). [Emphasis added.]

---

[4] Subsection (2) provides that the amount of the collateral source setoff be reduced by the amount paid for insurance premiums, except for premiums on insurance that was required by law. MCL 600.6303(2).

The trial court initially ruled that because each of the healthcare insurers that paid medical expenses asserted a lien in accordance with § 6303(3), it was

> satisfied that the collateral source rule does not encompass a situation, such as is found in the instant case, in which a lien holder exercises a lien. All payments made by Aetna and Priority Health are subject to asserted liens. Wherefore the statutory collateral source set off rule no longer applies to this case and no reduction in the Jury award is warranted.

Although the trial court relied on *Zdrojewski*, we find that case is not dispositive of the issue presented here. The *Zdrojewski* Court held that when healthcare insurers asserted liens for less than the amount that they actually paid, the latter amount determined the exclusion as a collateral source under § 6303(4). The Court noted that "the statute does not make any provision for a situation where a lien has been exercised, but for an amount less than the lienholder would be legally entitled to recover." *Zdrojewski*, 254 Mich App at 70. The Court concluded that "[b]ecause the statute clearly states that benefits subject to an exercised lien do not qualify as a collateral source, and [Blue Cross Blue Shield of Michigan (BCBSM)] and Medicare exercised their liens, health insurance benefits provided by BCBSM and Medicare to plaintiff do not constitute a collateral source under MCL 600.6303(4)." *Id.* While this ruling supports plaintiffs' position that the insurance payments were not collateral sources because the insurers asserted a lien with respect to the payments, it also supports defendants' position that only payments an entity actually makes and asserts a lien for—and no lien may be asserted for insurance discounts—are excluded under § 6303(4).

In denying defendants' motion for reconsideration on this issue, the trial court asserted an alternative

basis for its ruling. Specifically, the court found that defendants did not prove the amount of the discount or that the insurance companies would not assert a lien in the future. This reasoning does not appear to have merit. From the arguments of the parties, it does not appear that there is any dispute regarding the amount of the insurance discount or that an additional lien would be asserted in the future. Indeed, § 6303(3) sets a strict time limit for the assertion of a lien after a plaintiff gives notice of a favorable verdict: "If a contractual lien holder does not exercise the lien holder's right of subrogation within 20 days after receipt of the notice of the verdict, the lien holder shall lose the right of subrogation." Consequently, we conclude that the trial court's supplemental reason does not support its ruling.

We conclude that the two insurers in this case, Aetna and Priority Health, or the payments they made to plaintiffs' healthcare providers are "collateral sources" within the plain meaning of § 6303(1) because both insurers "paid . . . in whole or in part" "the expense of medical care" that plaintiffs sought in a personal injury action and for which plaintiffs obtained a jury verdict in their favor. Furthermore, the insurance discounts that reduced the amount of the medical expenses that plaintiffs would otherwise have been responsible to pay must also plainly be "benefits received or receivable from an insurance policy" and, therefore, a "collateral source" within the meaning of the first sentence of MCL 600.6303(4). Although this reading of the first sentence of § 6303(4) is consistent with common sense and economic reality, it is also consistent with how a dictionary defines "benefit" as being "something that is advantageous or good; an advantage" or "a payment made to help someone or given by a benefit society,

insurance company, or public agency." *Random House Webster's College Dictionary* (1996).[5]

Additionally, treating insurance discounts as a collateral source under § 6303 is consistent with the Legislature's purpose in enacting the statute: precluding a plaintiff from receiving a double recovery for a single loss. See *Heinz v Chicago Rd Inv Co*, 216 Mich App 289, 301; 549 NW2d 47 (1996). But because § 6303 is in derogation of the common law that permits a plaintiff's double recovery when a loss was also paid by insurance, *Nasser*, 435 Mich at 58, the statute must be construed consistently with its plain terms to make "the least change in the common law," *Velez*, 492 Mich at 17. Because insurance discounts are "benefits received or receivable from an insurance policy" within the plain meaning of the first sentence of § 6303(4), we must conclude that the insurance discounts are also "benefits paid or payable" within the plain and ordinary meaning of the last sentence of § 6303(4). The words "paid" and "payable" are both derived from the word "pay," which is defined as "to discharge or settle (a debt, obligation, etc.), as by transferring money or goods, or by doing something." *Random House Webster's College Dictionary* (1996). There appears to be no dispute that the insurance discounts here, along with cash payments, discharged or settled plaintiffs' debt or obligation to their healthcare providers. So, assuming that an insurance discount is a "benefit[] paid or payable" within the meaning of § 6303(4), then the last sentence of subsection (4) would read: "Collateral source does not include [an insurance discount used to settle or discharge a debt of the plaintiff for medical expenses provided] by [an

---

[5] Where statutory words are undefined, a dictionary may be consulted to confirm their plain and ordinary meaning. *McLean v McElhaney*, 289 Mich App 592, 602; 798 NW2d 29 (2010).

insurance company] entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised pursuant to subsection (3)."

When we apply this analysis of the statute to the undisputed facts of this case, we must affirm the trial court. It is undisputed that each insurance company that discharged plaintiffs' medical expenses, in part by cash payment and in part by an insurance discount, also was "entitled by contract to a lien against the proceeds" of plaintiffs' civil action and "exercised [the lien] pursuant to subsection (3)." MCL 600.6303(4). Thus, applying the plain terms of the last sentence of § 6303(4) compels the conclusion that both the cash payments and discount, i.e., the "benefits received or receivable from an insurance policy," are excluded as statutory collateral source benefits. This reading of the statute's plain terms makes "the least change in the common law." *Velez*, 492 Mich at 17. The Legislature could have, but did not, write the statute to say that the § 6303(4) collateral source exclusion is limited to the "amount of" a validly exercised lien. The intent of the Legislature to so limit the statutory exclusion cannot be derived from the language of the statute itself. Accordingly, we may not read that intent into the statute. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011). Finally, although not directly on point, our reading of the statute is also consistent with this Court's holding in *Zdrojewski*, 254 Mich App at 70.

In sum, we affirm the trial court's ruling regarding collateral source payments under MCL 600.6303. Although we find that an insurance discount is a "collateral source" by which plaintiffs' medical expenses were "paid or payable" and that such a discount is a benefit "received or receivable from an insurance policy," the

plain terms of the exclusion from the statutory collateral source rule of § 6303(4) when a contractual lien is exercised is not limited to the amount of the lien; it applies to all benefits that were paid or payable by a "legal entity entitled by contract to a lien."

We affirm the trial court's collateral source ruling, but we reverse and remand for entry of an amended judgment regarding the application of common-law setoff consistent with this opinion. We do not retain jurisdiction. Because neither party prevailed in full and because questions of public policy are involved, we award no taxable costs under MCR 7.219.

HOEKSTRA, P.J., concurred with MARKEY, J.

RONAYNE KRAUSE, J. (*concurring*). I agree that the trial court erroneously set off only 1/3 of the settlement amount and correctly excluded the entirety of plaintiffs' insurance discounts under the collateral source statute. As to the latter, I agree with the majority's conclusion that a plain reading of MCL 600.6303 compels that result. As to the former, I disagree with the majority's conclusion that the trial court's error was a violation of the important and long-standing principle that plaintiffs should be compensated fully but only once for a given injury. Nonetheless, I agree with the result reached by the majority.

It appears to me that, in fact, the trial court made a valiant but necessarily doomed attempt to *fulfill* the principle of compensating fully but only once for an injury. Unfortunately, I concur that the trial court was not permitted to do so, for the simple reason that in making the attempt, the trial court essentially rewrote plaintiffs' settlement agreement with St. Mary's Hospital. Because the agreement did not itself allocate the

settlement among the injuries, it would be impossible for any court to do so without drafting into the parties' contract something that the parties themselves did not include. Absent extreme and unusual circumstances, courts may not do so; the parties are of necessity bound to their contract. Had the contract specified a percentage or dollar value allocated to Makenzie's injuries, it would have been proper for the court to set off only that amount. Because the contract did not do so, the trial court could not rescue plaintiffs from their own voluntary agreement. Consequently, I conclude that the court had no choice but to set off the entire amount, and it erred by failing to do so.

I concur in the majority's result.