*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CYNTHIA NELSON, Personal Representative of the ESTATE OF EDITH GRIMES,

        Plaintiff-Appellee,

v

BEAUMONT HEALTH, and WILLIAM BEAUMONT HOSPITAL, doing business as BEAUMONT HOSPITAL ROYAL OAK,

        Defendants-Appellants.

FOR PUBLICATION
October 28, 2025
10:29 AM

No. 371767
Oakland Circuit Court
LC No. 2020-184804-NH

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

BAZZI, J.

In this action for wrongful death by medical malpractice, defendants, Beaumont Health and William Beaumont Hospital, doing business as Beaumont Hospital Royal Oak (Beaumont Royal Oak), appeal as of right the judgment against defendants and in favor of plaintiff, Cynthia Nelson, as personal representative of the estate of Edith L. Grimes. Defendants further appeal the trial court's subsequent order denying their motion for remittitur or new trial. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In October 2018, the decedent was 63 years old and suffered from hypertension, diabetes, renal disease requiring dialysis, and peripheral vascular disease. She had already been hospitalized for extended periods on multiple occasions during 2018 when she was admitted to Beaumont Hospital Farmington Hills for acute respiratory distress. The decedent had undergone multiple intubations, which led to a tracheostomy during her stay at Beaumont Hospital Farmington Hills. The decedent was transferred to Beaumont Royal Oak six days after this procedure, where her treatment included resumption of dialysis and weaning from ventilator-dependency.

Ten days into her admission to Beaumont Royal Oak, the decedent received dialysis, under the care of a registered nurse. During this treatment, the dialysis machine sounded multiple alerts because the decedent rolled on her side, blocking the catheter, and the nurse assisted the decedent in repositioning her on her back and asked the decedent to stay in that position. On the last of

these occasions, the decedent was unresponsive when the nurse instructed her to lie on her back. The nurse's notes in the medical record indicate that when she placed the decedent on her back, she found the decedent's tracheostomy tube was dislodged, and that the decedent had no pulse and was not breathing. Emergency medical responders resuscitated the decedent, but she suffered a severe anoxic brain injury with no chance of neurologic recovery, and she died six months later.

Plaintiff filed a complaint contending that defendants were liable for medical malpractice resulting in the decedent's death. At the subsequent jury trial, plaintiff produced evidence of funeral and burial expenses, in addition to the decedent's Social Security Disability benefits in 2017. Plaintiff further testified that, as representative of the estate, she had received medical bills for the decedent's care, and "Medicare and Medicaid sent a bill of one million five hundred or something like that . . . ." Plaintiff presented, and defendants stipulated to the admission of, a letter from the Centers for Medicare & Medicaid Services (CMS), which stated that various providers had billed Medicare $1,406,852.83 for medical treatment, and that Medicare had "identified $188,734.20 in conditional payments that we believe are associated with your case." Before closing arguments, defendants drafted a verdict form, to which plaintiff agreed.

The jury found that defendants were negligent, the negligence was a proximate cause of the decedent's death, and plaintiff sustained damages. The verdict form asked, "What is the total amount of economic damages (such as the reasonable expenses of necessary medical care and reasonable funeral and burial expenses) sustained by the Estate of Edith Grimes, deceased?" The jury answered with "$1,218,118.63," and it awarded nothing in answer to separate questions concerning past and future noneconomic damages. The jury further determined that the decedent's own negligence was a proximate cause of her death, and it allocated the comparative fault at 65% for defendants and 35% for the decedent.

Plaintiff moved for entry of judgment for over $900,000, arriving at this amount by adding the total damages and interest, and reducing this by the decedent's share of comparative fault. Defendants objected to plaintiff's proposed judgment, arguing that because the economic damages the jury awarded exactly equaled the unpaid amount of the medical bills as enumerated in the CMS letter ($1,406,852.83 minus $188,734.20 equals $1,218,118.63), the jury must have intended to award the full amount of the unpaid medical bills, and nothing else. Defendants argued that under MCL 600.1482, plaintiff could recover only the amount actually paid for those services, and not contractual discounts—which defendants argued were represented by the $1,218,118.83 figure. Defendants further asserted that the award should be modified accordingly. The trial court entered judgment in favor of plaintiff in the amount of $962,624.72, as plaintiff proposed.

Defendants then moved for remittitur or a new trial, arguing that the jury's award was contrary to law because it exceeded the greatest amount substantiated by the evidence. Defendants contended that the record supported no more than approximately $12,000 in funeral and burial expenses, approximately $43,000 in lost gifts and gratuities,[1] and, citing MCL 600.1482,

---

[1] Defendants calculated this amount on the basis of what defendants asserted was most generous to plaintiff—by assuming the decedent would have given plaintiff all her income during the time between the decedent's death and the jury verdict.

$188,734.20 for the decedent's medical care. Thus, defendants asserted, the highest amount of past economic damages corroborated by the record was approximately $240,000, such that the present circumstances warranted a remittitur or a new trial. The trial court denied defendants' motion. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo whether the trial court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). The reviewing court should "ascertain the legislative intent that may be reasonably inferred from the words of the statute." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). If the language is clear and unambiguous, the reviewing court should assume that the Legislature intended its plain meaning, and enforce the statute as written. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

Whether to grant new trial is in the trial court's discretion, *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 608; 568 NW2d 93 (1997), and its decision is reviewed for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001); *Zaremba Equip Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court necessarily abuses its discretion when it selects an outcome on the basis of an erroneous application of law. *Id*. See also *Koon v United States*, 518 US 81, 100; 116 S Ct 2035; 135 L Ed 2d 392 (1996).

A trial court's decision regarding remittitur is reviewed for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 533; 443 NW2d 354 (1989); *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 462; 750 NW2d 615 (2008). A reviewing court must view the evidence in the light most favorable to the nonmoving party. *Silberstein*, 278 Mich App at 462. The trial court, having witnessed the testimony and the evidence, in addition to the jury's reactions, is in the best position to make an informed decision regarding the excessiveness of the verdict; thus, due deference should be given to the trial court's decision. *Palenkas*, 432 Mich at 531.

## III. ANALYSIS

### A. PHANTOM DAMAGES

Defendants argue that the trial court failed to properly apply MCL 600.1482 because the court entered a judgment corresponding to the full amount that the jury awarded, which defendants claim included "phantom damages."[2] We disagree.

Fundamentally, the determination of the damages necessary to compensate a plaintiff for personal injury rests within the sound discretion of the trier of fact, and there is no absolute standard by which to measure such awards. *Kelly*, 465 Mich at 35-36. Relatedly, damages need not be proven with mathematical precision. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 525; 687 NW2d 143 (2004). A jury's verdict will be disturbed only if it shocks the judicial conscience, appears to be unsupported by the proofs, or seems to be the product of improper methods, passion, caprice, or prejudice. *Precopio v Detroit*, 415 Mich 457, 465; 330 NW2d 802 (1982).

Regarding a judgment for damages in a medical malpractice action, MCL 600.6306a provides, in pertinent part:

(1) After a verdict is rendered by a trier of fact in favor of a plaintiff in a medical malpractice action, an order of judgment shall be entered by the court . . . . [T]he order of judgment shall be entered . . . in the following order and in the following amounts:

(a) All past economic damages, less collateral source payments . . . .

(b) All past noneconomic damages, reduced subject to the limitations in [MCL 600.]1483 . . . .

(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible . . . .

(d) All future medical and other health care costs . . . .

(e) All future noneconomic damages. . . reduced subject to the limitations in [MCL 600.]1483 . . . .

(f) All taxable and allowable costs, including interest as permitted . . . on the judgment amounts.

---

[2]"Phantom damages" are the difference between medical charges and the reduced amount actually paid for the medical care through public or private insurance. Kiser, *Under Observation: Wilson v Inthachak Shows that Georgia's Emergency Care Statute Still Lacks a Uniform Interpretation*, 76 Mercer L Rev 505, 521 (2024).

(2) If the plaintiff was assigned a percentage of fault . . . , the total judgment amount as determined under this section shall be reduced . . . by the percentage of plaintiff's fault . . . .

This Court addressed the subject of phantom damages in *Greer v Advantage Health*, 305 Mich App 192; 852 NW2d 198 (2014), which tested the bounds of a jury's discretion to determine an appropriate award, and the trial court's statutory obligation to adjust the judgment when phantom damages have been awarded. In *Greer*, the jury awarded the plaintiff damages for past medical expenses based on the amount billed, and the defendant argued that the court should enter judgment for the amount actually paid. *Id*. at 196. The trial court entered judgment without reducing the jury's award for past medical expenses. *Id*. at 197.

The *Greer* Court characterized the difference between the amount charged and the amount accepted as payment as a "discount" provided by the insurer. *Id*. at 196. The Court further characterized the discount as a "collateral source," *id*. at 210, but it held that when the entity providing the collateral source asserts a lien, the pertinent statutory language was explicit that a reduction in the verdict was impermissible, *id*. at 212-213, citing MCL 600.6303(4). Because the insurers had asserted liens, there was no post-verdict reduction that could properly be applied. *Greer*, 305 Mich App at 212-213.

Our Supreme Court initially granted the *Greer* defendants' application for leave to appeal, but later vacated its order doing so, ultimately denying leave. *Greer v Advantage Health*, 499 Mich 975; 880 NW2d 786 (2016). Justice ZAHRA agreed with the decision, but wrote separately "to bring this case to the attention of the Legislature." *Id*. at 975 (ZAHRA, J., concurring). Justice ZAHRA opined that the collateral-source statute had "a loophole that permits a plaintiff to recover for medical expenses never owed or paid," *id*. at 977, constituting "a windfall recovery of the retail price for medical services," which Justice ZAHRA encouraged the Legislature to address, *id*. at 978.

Six months after Justice ZAHRA's concurrence,[3] the Legislature enacted 2016 PA 556, stating:

---

[3] A court may consider the law's historical context, as well as predecessor statutes, in construing a statute. *Mason Co v Dep't of Community Health*, 293 Mich App 462, 473-479; 820 NW2d 192 (2011). Similarly, an amendment enacted soon after controversies arise may be regarded as an interpretation or clarification of the original act. *Detroit v Walker*, 445 Mich 682, 697; 520 NW2d 135 (1994); *Attorney General v City of Flint*, 269 Mich App 209, 214; 713 NW2d 782 (2005). Moreover, remedial statutes are to be liberally construed in favor of the persons intended to be benefited. *Empson-Laviolette v Crago*, 280 Mich App 620, 629; 760 NW2d 793 (2008). See also *Tobin v Providence Hosp*, 244 Mich App 626, 665; 624 NW2d 548 (2001), citing *Rookledge v Garwood*, 340 Mich 444, 453; 65 NW2d 785 (1954) (stating that a statute is remedial if, among other things, it is designed to correct an existing oversight in the law).

(1) Notwithstanding any other law to the contrary, in an action that alleges a medical malpractice claim, both of the following apply:

(a) The damages recoverable for past medical expenses or rehabilitation service expenses shall not exceed the actual damages for medical care that arise out of the alleged malpractice.

(b) Except for evidence of the actual damages for medical care, the court shall not permit a plaintiff to introduce evidence of past medical expenses or rehabilitation service expenses at trial.

(2) As used in this section:

(a) "Actual damages for medical care" means both of the following:

(*i*) The dollar amount actually paid for past medical expenses or rehabilitation service expenses by or on behalf of the individual whose medical care is at issue, including payments made by insurers, but excluding any contractual discounts, price reductions, or write-offs by any person.

(*ii*) Any remaining dollar amount that the plaintiff is liable to pay for the medical care.

(b) "Person" means an individual, partnership, corporation, association, governmental entity, or other legal entity. [MCL 600.1482.]

The damages limitation in MCL 600.1482(1)(a) is similar to the noneconomic-damages cap of MCL 600.1483,[4] an existing statute, see 2012 PA 68, when MCL 600.1482 was enacted. MCL 600.1483 provides, in relevant part:

(1) In a claim for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the medical malpractice of all defendants, shall not exceed $280,000.00 unless . . . 1 or more . . . exceptions apply . . ., in which case damages for noneconomic loss shall not exceed $500,000.00 . . . .

This Court has clarified that MCL 600.1483 does not affect the jury's determination of the amount of damages; rather, the statute limits the legal consequence of the jury's finding. *Zdrojewski v Murphy*, 254 Mich App 50, 77; 657 NW2d 721 (2002). Defendants contend that, despite the admission of evidence of phantom damages in apparent violation of MCL 600.1482(1)(b), MCL

---

[4] Identical language in various provisions of the same act should be construed identically. *The Cadle Co v Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009).

600.1482(1)(a) should apply to mitigate the legal repercussions of the jury's finding in the present case.

Unlike MCL 600.1483, the application of MCL 600.1482 is not included among the steps set forth in MCL 600.6306a for arriving at a medical-malpractice judgment after the entry of a verdict for damages.[5] Plain statutory language, such as MCL 600.1482, may be rendered ambiguous by its interaction with other statutory provisions. *Titan Ins Co v State Farm Mut Auto Ins*, 296 Mich App 75, 84; 817 NW2d 621 (2012). While the application of MCL 600.1483 is clear, the statute lacks guidance on the manner and timing of administering MCL 600.1482(1)(a).

But a court interpreting a statute must, to the greatest extent possible, give effect to every phrase or clause. *US Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d 101 (2009). MCL 600.1482(1)(b) prohibits the admission of evidence of phantom damages, but MCL 600.1482(1)(a) clearly states that "damages recoverable for past medical expenses . . . shall not exceed the actual damages for medical care." Plaintiff argues that it would render MCL 600.1482(1)(a)'s recovery cap superfluous if MCL 600.1482(1)(b)'s evidentiary limitations could be imposed to reduce plaintiff's recovery. Stated alternatively, if the evidentiary restriction is strictly enforced, the recovery cap becomes completely unnecessary. The presence of that cap, however, indicates that it was intended as a safeguard for situations in which evidence of phantom damages is admitted.[6] Indeed, MCL 600.1482(1) explicitly states that "both of the following apply," as a preface to MCL 600.1482(1)(a) and MCL 600.1482(1)(b). Bearing in mind that courts should avoid any construction that would render any part of a statute surplusage or nugatory, *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010), the sound interpretation of the statutory scheme is to recognize MCL 600.1482(1)(a) as applicable at the post-verdict stage.

Although MCL 600.6306a does not explicitly cite to MCL 600.1482, the Michigan Supreme Court has opined that apparent inconsistencies should be reconciled if possible. *Nowell v Titan Ins Co*, 466 Mich 478, 483; 648 NW2d 157 (2002). Accordingly, the "past economic damages" specified in MCL 600.6306a(1)(a) should be read to include the limitation of MCL 600.1482(1)(a) on "damages recoverable for past medical expenses or rehabilitation service."[7]

---

[5] This is partially explained by the fact the enactment of MCL 600.1483, 2012 PA 68, predates the enactment of MCL 600.6306a, 2012 PA 608, which predates the enactment of MCL 600.1482, 2016 PA 556. However, the Legislature is charged with knowledge of existing laws on the same subject and is presumed to have considered the effect of new laws on all existing laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993).

[6] Courts should apply common sense when construing a statute. *Marquis v Hartford Accident & Indemnity*, 444 Mich 638, 644; 513 NW2d 799 (1994).

[7] When two provisions conflict and one is specific to the subject matter while the other is only generally applicable, the specific provision prevails. *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008). The specific statute is treated as an exception to the general one. *Meridian Twp v Ingham Co Clerk*, 285 Mich App 581, 599-600; 777 NW2d 452 (2009).

We will now analyze the extent to which the economic damages awarded in this case were exclusively attributed to past medical expenses. Plaintiff contends that such a conclusion would be speculative, and cites *Shivers v Schmiege*, 285 Mich App 636, 643-645; 776 NW2d 669 (2009), in support. In *Shivers*, this Court advanced that "any attempt to parse the jury verdict into collateral-covered and noncollateral-covered expenses would be pure speculation," and it resolved that the defendants were appropriately "stuck with their own verdict form," because a reduction of an economic-damages award may not be premised on an indeterminate portion of the award ostensibly attributable to collateral sources. *Id.* at 654. Additionally, this Court has established that a verdict may not be set aside merely because the method used to compute damages is indeterminable. *Diamond v Witherspoon,* 265 Mich App 673, 694; 696 NW2d 770 (2005).

While the jury award in the present case matched the difference between the billed amount and the conditional payment total stated in the CMS letter, the verdict form provided only a single field for "total amount of economic damages," and as in *Shivers*, 285 Mich at 654, defendants are "stuck with" the verdict form they drafted. In conjunction with the CMS letter detailing various medical charges, plaintiff presented evidence of the decedent's annual income of approximately $10,000, about $12,000 in funeral and burial expenses, and bedside care provided by plaintiff to the decedent for which no monetary value was assigned. Absent a form asking the jury to delineate the economic damages into specific categories, we cannot know what the jury considered and what damages they intended to compensate. Because "any attempt to parse the jury verdict . . . would be pure speculation," *id.*, the proper inference is that the award was likely intended, at least in part, to compensate for past medical expenses, not that it was necessarily awarded entirely for such expenses.

Having concluded that MCL 600.1482(1)(a) is applicable as a post-verdict reduction, and that the jury in this case awarded certain past medical expenses, the pertinent remaining inquiry is whether the judgment entered constituted error requiring reversal. The statute limits recoverable past medical damages to "actual damages for medical care," MCL 600.1482(1)(a), and defines the term as "[t]he dollar amount actually paid for past medical expenses or rehabilitation service expenses by or on behalf of the individual whose medical care is at issue," MCL 600.1482(2)(a)(*i*), and, "[a]ny remaining dollar amount that the plaintiff is liable to pay for the medical care," MCL 600.1482(2)(a)(*ii*).

The CMS letter provided that various medical providers billed Medicare $1,406,852.83 for services to the decedent, and that Medicare had "identified $188,734.20 in conditional payments that we believe are associated with your case." The letter further stated, "Please be advised that the conditional payment amount listed above is an interim amount. We are still reviewing medical claims related to your case . . . . It will be updated once we receive settlement information from you." No rebuttal evidence was offered by defendants concerning this information or its applicability to plaintiff's potential recoverable damages.

Defendants emphasize that Medicare prohibits participating medical providers from charging Medicare recipients for services covered by Medicare, with exceptions for deductibles and coinsurance obligations. See 42 USC 1395cc(a)(1)(A); 42 USC 1395cc(a)(2)(A); 42 CFR 489.21(a); *Greer*, 305 Mich App at 211 (explaining that an insurer's payment "discharged or settled [the patients'] debt or obligation to their healthcare providers"). Defendants further assert that because plaintiff presented no evidence that the decedent's estate was liable for any

deductibles or coinsurance amounts, there was no indication that there was "[a]ny remaining dollar amount that the plaintiff is liable to pay for the medical care" under MCL 600.1482(2)(a)(*ii*), permitting recovery. See *Shivers*, 285 Mich App at 643-645 (vacating an award of future damages because the "plaintiff presented no evidence from which the jury could calculate such damages").

However, the CMS letter itself is evidence of "[a]ny remaining dollar amount that the plaintiff is liable to pay for the medical care," MCL 600.1482(2)(a)(*ii*). The letter detailed that there was $1.40 million in medical billings for the decedent's care, and that Medicare identified approximately $190,000 in "conditional payments" as an "interim amount," which would be "updated once [CMS] receive[d] settlement information." Not only was this total provided with the cited disclaimer, but each individual medical charge is listed with a corresponding "conditional payment," rather than a payment indicated as actually issued to or accepted by the medical providers. For those unfamiliar with this type of correspondence, there is little basis for determining who remained liable for any of the amounts listed, other than that the letter was addressed to the decedent. Moreover, defendants presented no evidence explaining why the decedent's estate would not be responsible for such expenses. Although Medicare restricts providers from seeking patient balances after accepting its payment, the letter provides no indication that the interim "conditional payments" were actually tendered or accepted.

As previously noted, proof of damages need not be presented with mathematical precision, *Ensink*, 262 Mich App at 525, and the amount of damages is an issue determined by trier of fact, *McManamon v Redford Twp*, 273 Mich App 131, 141; 730 NW2d 757 (2006). Accordingly, the application of MCL 600.1482(1)(a) at the post-verdict phase should not require such precision or renewed fact-finding. The trial court was tasked with determining whether the evidence substantiated plaintiff's claim of incurred damages, specifically medical expenses amounting to $1,218,118.63. The court found sufficient support for this determination within the record. Consequently, the judgment rendered by the trial court was not in error.[8]

### B. REMITTITUR

---

[8] The conclusion that the jury's award was supported by the evidence does not render the question of the post-verdict applicability of MCL 600.1482(1)(a) moot. One of "the most critical" aspects of judicial authority is the requirement there be a "real" controversy between the parties, as opposed to a "hypothetical" one, *City of Warren v City of Detroit*, 471 Mich 941, 942; 690 NW2d 94 (2004) (MARKMAN, J., concurring), and a case is moot if it presents only abstract questions of law, which do not rest on existing facts or rights, *Ryan v Ryan*, 260 Mich App 315, 330; 677 NW2d 899 (2004). However, mootness is a threshold issue trial courts must address *before* reaching the substantive issues of a case. *In re MCI Telecom Complaint*, 460 Mich 396, 434-435 n 13; 596 NW2d 164 (1999). Defendants' issue on appeal is whether MCL 600.1482(1)(a) required the trial court to enter a judgment of a reduced amount, which excludes any "phantom damages." We cannot address whether the evidence supported a finding that the jury award was not "phantom damages" prohibited under MCL 600.1482(1)(a) without first addressing exactly what MCL 600.1482(1)(a) prohibits, including how this prohibition applies in the present circumstances.

Defendants argue that the trial court erred in denying their motion for remittitur because the jury's award exceeded what the evidence supported. We disagree.

MCR 2.611, the court rule governing new trials and the amendment of judgments, states, in pertinent part:

(A) Grounds.

(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

(b) Misconduct of the jury or of the prevailing party.

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

(d) A verdict clearly or grossly inadequate or excessive.

(e) A verdict or decision against the great weight of the evidence or contrary to law.

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

(g) Error of law occurring in the proceedings, or mistake of fact by the court.

(h) A ground listed in MCR 2.612 warranting a new trial.

* * *

(E) Remittitur and Additur.

(1) If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support . . . .

See also MCL 600.6098(2)(b); MCL 600.6098(2)(d); *McManamon*, 273 Mich App at 139; *Shaw v Ecorse*, 283 Mich App 1, 17; 770 NW2d 31 (2009).

In determining whether remittitur is appropriate, a trial court must view the evidence in the light most favorable to the nonmoving party and resolve whether the jury award was supported by the evidence. *Taylor v Kent Radiology*, *PC*, 286 Mich App 490, 522; 780 NW2d 900 (2009). An award is excessive when it exceeds "the usual, necessary, or proper limit or degree." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 763; 685 NW2d 391 (2004). When a verdict is unsubstantiated by the record, the trial court "may fairly conclude that the verdict exceeds the amount required to compensate the injured party." *Id*. at 765. This determination must be on the basis of objective criteria relating to the actual conduct of the trial and the evidence presented. *Palenkas*, 432 Mich at 532; *Silberstein*, 278 Mich App at 462.

"The power of remittitur should be exercised with restraint." *Silberstein*, 278 Mich App at 462. If the jury's award of economic damages falls reasonably within the range supported by the evidence, and within the limits of what reasonable minds would deem just compensation, the award should not be disturbed. *Palenkas*, 432 Mich at 532-533; *Silberstein*, 278 Mich App at 462. A verdict should not be set aside merely because the method the jury used to compute damages cannot be ascertained. *Diamond*, 265 Mich App at 694. The amount awarded on remittitur must be the highest possible amount the evidence will support. MCR 2.611(E)(1); *Heaton v Benton Constr Co*, 286 Mich App 528, 539; 780 NW2d 618 (2009).

As addressed above, the record in the present case supported the award of past economic damages of $1,218,118.63, particularly given the unrebutted CMS letter. Because the award fell reasonably within the range corroborated by the evidence, the award was not excessive. *Palenkas*, 432 Mich at 532-533; *Silberstein*, 278 Mich App at 462. Therefore, the trial court properly denied the motion for remittitur.

## IV. CONCLUSION

MCL 600.1482(1)(a) governs the post-verdict phase of medical malpractice cases, granting courts the authority to modify jury awards for damages. In the present case, the jury awarded all potential economic damages as a consolidated lump sum. The evidence substantiated the plaintiff's entitlement to the full amount awarded. Consequently, the trial court appropriately entered a judgment that aligned with the jury's findings. Furthermore, the trial court rightly denied defendants' motion for remittitur, determining that the jury's award was justified and not excessive based on the available record.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello

-11-