# STATE OF MICHIGAN

# COURT OF APPEALS

MERCANTILE BANK MORTGAGE
COMPANY, LLC,

       Plaintiff/Counterdefendant-
       Appellee,

v

NGPCP/BRYS CENTRE, LLC and NGP
CAPITAL PARTNERS, LLC,

       Defendants/Counterplaintiffs-
       Appellants,

and

FORD A. GRIFO, DANIEL J. NEMES and
MARK S. PROVENZANO,

       Defendants/Counterplaintiffs.

UNPUBLISHED
September 27, 2018

Nos. 335600, 335715
Wayne Circuit Court
LC No. 09-030278-CK

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

This began as a suit to collect a debt originating from a $744,000 commercial loan. It has morphed into a battle over attorney fees. After payments made by the debtor and credits allocated under the mortgage, only a little more than $200,000 remains unpaid. But thanks to six years of litigation, an appeal and a trip to bankruptcy court, the legal fees far exceed the outstanding balance. At issue is the circuit court's award to Mercantile Bank of more than $500,000 in attorney fees.

Several of defendants' challenges to the fee award are legally unsupportable. But defendants' claim that the circuit court insufficiently justified the amount of the award has merit. The circuit court failed to make any findings regarding the reasonableness of the hourly rate charged by most of the attorneys who worked on the case on Mercantile's behalf. The court's opinion also failed to address defendants' objections to the reasonableness of the time spent by Mercantile's lawyers. These gaps make it impossible for this Court to conduct a meaningful appellate review. We affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

-1-

# I. BACKGROUND FACTS AND PROCEEDINGS

The property at issue is a commercial building in Grosse Pointe Woods. Defendants NGPCP/BRYS Centre, LLC (the Centre) and NGP Capital Partners, LLC, purchased the property in 2007 with a $744,000 loan issued by Mercantile Bank. Three individuals personally guaranteed the loan: Ford A. Grifo, Daniel J. Nemes, and Mark S. Provenzano. Capital Partners provided a corporate guarantee. Mercantile additionally secured the loan with a mortgage on the property and an assignment of rents agreement executed by the Centre.

Mercantile Bank's 2009 complaint alleged loan payment defaults by the corporate entities and the three individual guarantors. In seven pages, it stated straightforward claims for breach of contract and foreclosure, averring that $763,521.77 remained due. The defendants filed a counter-complaint raising five causes of action. "Contentious discovery proceedings followed." *Mercantile Bank Mtg Co, LLC v NGPCP/BRYS Ctr, LLC*, 305 Mich App 215, 219; 852 NW2d 210 (2014) (*Mercantile Bank I*).

An ill-fated case evaluation was conducted in March 2011. The case evaluators produced a single award of $750,000 in Mercantile's favor against all defendants. Mercantile accepted the $750,000 award as to the individual guarantors, who also accepted it. Mercantile rejected the award against the Centre and Capital Partners, who accepted it (we refer to both corporate defendants as Capital Partners). This Court eventually declared the case-evaluation determination improper and invalid, as it consisted of a single award rather than separate awards against each defendant. *Id*. at 225. Before we issued our opinion, however, the case-evaluation results acquired a leading role in the litigation.

One month after case evaluation, the circuit court granted summary disposition in Mercantile's favor against Capital Partners. Mercantile asserted that the amount due on the loan had grown to $979,777 and prepared a judgment in that amount. Judgment did not enter, however, until September 2011, almost six months later. In the interim, the possibility of case-evaluation sanctions—including attorney fees—took center stage.

In June 2011 and before judgment entered against Capital Partners, the individual defendants paid the bank $760,109.62 and officially exited the case. This payment produced a second appellate issue: whether the judgment against Capital Partners should reflect a credit for the amount paid by the individual defendants after case evaluation. The parties argued at great length about the language of the judgment. Counsel on both sides acknowledged that Mercantile's rejection of the case-evaluation award against Capital Partners raised the specter of attorney fees.

The parties' disagreement about the language of the judgment hijacked the case, transforming it from a relatively simple foreclosure action to a war over attorney fees. Mercantile argued strenuously that the judgment amount should not include the credits. Capital Partners fought tirelessly to include the credits in the judgment. The prospect of a case evaluation-related attorney-fee award drove both sides' arguments about the terms of the judgment.

In September 2011, the circuit court entered judgment for Mercantile in the amount Mercantile advocated: $979,777.05. The judgment also ordered foreclosure and a sale of the property unless Capital Partners paid the $979,777.05, plus interest, costs, attorney fees, and other amounts due under the loan documents. Capital Partners claimed an appeal from this judgment. Approximately one year later, the circuit court entered an order awarding Mercantile $90,191.95 in attorney fees for the period of August 2009 through September 23, 2011. Capital Partners appealed that order, too, and we consolidated the appeals.

When Mercantile announced a plan to proceed with a judicial sale of the property, Capital Partners brought a motion in the circuit court seeking a stay of the judgment pending this Court's decision. The circuit court granted the motion contingent on Capital Partners posting a bond in the amount of $179,000. Capital Partners did not post the bond. Instead, the Centre filed a Chapter 11 bankruptcy petition. The bankruptcy filing automatically stayed the foreclosure and enforcement of the judgment. Mercantile and the Centre proceeded to litigate aggressively in the bankruptcy court. Among the issues presented in that forum was the amount due Mercantile. According to a proof of claim filed in the bankruptcy court, attorney fees generated in the foreclosure action constituted most of that total. The bankruptcy court determined that the reasonableness of Mercantile's postjudgment attorney-fee request would be determined by the Wayne Circuit Court. The circuit court held its ruling on fees in abeyance pending this Court's decision.

Capital Partners presented three issues in its first appeal: whether the case evaluation resolved the entire case; if not, whether the judgment should have incorporated credit for amounts paid on the loan; and whether Mercantile was entitled to an attorney fee if the case had actually concluded with the case evaluation. In a published opinion issued in May 2014, we first held that the case evaluation panel violated MCR 2.403(K)(2) by issuing a single award on behalf of each plaintiff against each defendant. *Mercantile Bank I*, 305 Mich App at 225. Mercantile's attempt to partially accept and partially reject the award was improper and ineffective, we continued, as "[t]he court rules do not allow a party to partially accept and partially reject a single award." *Id*. Therefore, the case evaluation did not resolve the lawsuit. Our resolution of the case evaluation question eliminated Mercantile's potential exposure to case-evaluation sanctions.

We next determined that the circuit court erred by entering a judgment that failed to include the credits. We explained that "[o]n the judgment of foreclosure, the Centre and Capital Partners were entitled to credits for their partial payments and the payment made by the personal guarantors on the debt." *Id*. at 228. Because the trial court failed "to determine whether and in what amount partial payments were made on the debt," the judgment of foreclosure did not accurately reflect the amount due under the mortgage and notes. *Id*. We resolved the attorney fee issue as follows:

> The Centre and Capital Partners contend that, because the case evaluation award included attorney fees, the trial court's attorney fee award requires them to pay some attorney fees twice. The Centre and Capital Partners premise their argument on the existence of an accepted case evaluation award. However, for the reasons previously stated, there was no accepted case evaluation in this case. And, in any event, judgment was never entered on the case evaluation. The court

-3-

instead dismissed the personal guarantors from the case. We conclude that the Centre and Capital Partners' argument lacks merit. [*Id*. at 228-229.]

We remanded with an instruction that the circuit court determine the credits due the Centre and Capital Partners and "order judgment in the amount sufficient to discharge the debt, plus costs." *Id*. at 228.

Due to the retirements of the two jurists originally assigned the case, a new circuit judge conducted the remand proceedings. Mercantile moved to establish the credits due to Capital Partners and its recoverable costs, and sought attorney fees of $542,515.37. This fee request had nothing to do with case-evaluation sanctions; rather, it rested on the language of three contracts entered into by the parties (the mortgage, a promissory note, and a business loan agreement). All three contracts entitle Mercantile to "reasonable attorney fees" incurred to protect its interests.

Capital Partners countered that Mercantile was ineligible for any attorney-fee award because it had deliberately extended the litigation by refusing to enter a judgment including the credits, which in turn compelled the bankruptcy proceedings. After the circuit court ruled that it would conduct an evidentiary hearing to settle the credits issue, Capital Partners asserted that Mercantile's claim for postjudgment attorney fees was outside the scope of this Court's remand order.

Mercantile produced two witnesses at the evidentiary hearing: Justin Karl, a Mercantile senior vice president and commercial loan officer, and attorney Floyd Gates, who had represented Mercantile from the outset of the litigation. Karl testified regarding Mercantile's expenditures related to the property, the payments received, and Mercantile's payment of attorney fees. He described the data contained on several spreadsheets he prepared, which the court accepted as evidence. According to Karl, $1,044,067.71 remained due as of July 2015, including $503,000 in attorney fees, plus interest.

Gates testified about the attorney fee component of the bank's damages claim. At the inception of the suit, Gates was a senior partner at a Grand Rapids law firm—Kreis, Enderle, Hudgins and Borsos, P.C. When the case ended, Gates was a principal at Miller Canfield. Gates asserted that Kreis Enderle billed Mercantile at a reduced rate because he and other firm attorneys worked on it almost constantly. Gates charged $300 per hour for his services and those of Tom King, another partner. Sarah Fazio, a senior-level associate, billed at $250 an hour. At Miller Canfield the attorneys working on the file charged a "melded," negotiated rate of $285 per hour. In support of Mercantile's attorney-fee request, Gates produced a detailed invoice spanning more than 200 pages, and the 2014 State Bar of Michigan Economics of Law Practice Survey.

According to Gates, Fazio did most of the work on the case; Fazio did not testify at the 2015 hearing. Gates described Fazio's law school background and advised that that since graduating in 2000, she concentrated her practice on commercial litigation and bankruptcy. He opined that Fazio's work justified an hourly rate consistent with the 75th percentile of Grand Rapids attorneys as reflected in the Economics of Law Practice Survey, which amounted to $300 for litigation and $370 in bankruptcy matters. Gates claimed that he had conducted an analysis using the Survey for every lawyer who worked on the case and expressed that all had "been

-4-

billed at a reasonable rate." During his testimony, Gates did not provide any additional information about these attorneys, such as their names, the number of years they had practiced, or the number of hours that they billed.[1]

In response to Capital Partners' argument that many of the billings were unreasonable or unnecessary, Gates told the court, "I am confident in my opinion that the activities we undertook to defend the various strategies that were employed were reasonable and the time that we put into it was reasonable. The lawyers that we had working on it were reasonable." His testimony did not include a more detailed or specific discussion of any of the actual line items in the invoice. Rather, Gates focused on discrediting defendants' contention that Mercantile's defense of the judgment excluding the credits had been reasonable. Gates recounted that he had assured defense counsel that their clients would receive the credits, but Capital Partners persisted in litigating the judgment because it intended to pursue case evaluation sanctions. Gates acknowledged that Mercantile had incurred attorney fees of close to $200,000 during the bankruptcy proceedings, but contended that those fees were similar to the $150,000 charged by defendants' counsel. In total, Gates testified, defendants owed Mercantile $503,000 in attorney fees. He summarized:

> I'm of the opinion that the hourly rates for every lawyer that worked on this file were reasonable, given all the factors that we considered. Secondly, I am comfortable and of the opinion that every minute that we spent, collectively, on the defense of the various motions and strategies that were employed, the amount of time put into those energies were reasonable, in terms of doing what we had to do. And, third, as an overall number, while no question I bear the same shock that we have as much attorney[] fees in this case as we have[,] [t]here is no question the attorney[] fees are reasonable, based on the actions that we had to take and the defense that we had to respond to.

Attorney Scott Rooney testified as an expert witness for the defense. He termed "outrageous" the billings presented by Gates. Rooney asserted that Mercantile had litigated a simple case aggressively and was responsible for forcing defendants into bankruptcy by refusing to permit a judgment reflecting the credits. He criticized the number of attorneys assigned to work on the case, and questioned the meaning of "attention to detail," a phrase that appears in many of the billing entries. Rooney also expressed that Mercantile's lawyers had improperly billed for "fees on fees," and pointed to a November 2011 entry by Gates as exemplifying this approach. The entry states, "Conference with Ms. Fazio re: updated Bill of Particulars and strategy to proceed to recover additional attorney fees."

---

[1] Several months before the hearing, Gates submitted an affidavit in which he identified some of the attorneys who worked on the case at Kreis Enderle and Miller Canfield. In addition to the names of the attorneys, Gates's affidavit includes information regarding their specialties, years of practice, and standard billing rates.

Daniel J. Nemes, a retired CPA, an individual defendant, and a member of the corporate defendants, also testified at the evidentiary hearing. Nemes calculated that the amount due Mercantile (absent attorney fees) was $172,372. He claimed that if Mercantile had presented an accurate judgment reflecting the credits, defendants would have paid it to "end this madness."

The circuit court ordered the parties to provide their closing arguments in writing. Defendants' submission included that Mercantile's lawyers had charged $20,275 to respond to a motion for reconsideration, $75,045 in "fees for fees," $60,358 for their unsuccessful work in the Court of Appeals, more than $227,000 for the bankruptcy, and $52,070 for the remand proceedings. Defendants argued that Mercantile failed to carry its burden of demonstrating the reasonableness of its fees, as it had not introduced any evidence regarding most of the lawyers who worked on the case (which according to defendants numbered 38). Additionally, defendants pointed out, the billing records contained discrepancies meriting deductions. For example, a March 21, 2013 billing indicates expenses charged in the amount of $213, but Karl's spreadsheets reflected a payment by Mercantile for that billing of $22,798.13. Defendants also pointed to a June 13, 2013 billing stating a professional discount of $52,000, for which the spreadsheet indicates a payment of $49,192.43. Mercantile's closing brief did not address the discrepancies identified by defendants.

The circuit court issued an amended opinion and order more than a year later. The court first summarized the case's procedural history and then found that with the credits, the judgment of foreclosure amount was $203,167.43. The court added to that $90,191.95 in fees that were owed at the time the original judgment entered, bringing the judgment of foreclosure as of September 23, 2011 to $293,359.38. The court rejected defendants' argument that Mercantile was not entitled to any attorney fee, reasoning that defendants' contentions were not supported "by the record or by the contract." The court found it necessary for Mercantile "to pursue its claim in the bankruptcy proceedings and therefore the attorney fee was reasonable and necessary to protect its interest in the subject property."[2]

Invoking *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), the court found that the hourly rates charged by Gates and the other attorneys who worked on the case were reasonable. The court did not address any of the challenges to the reasonableness of the number of hours spent on various filings, or the discrepancies cited by Capital Partners. The court concluded that the judgment of foreclosure would total $717,978, most of which ($488,885.03) represented attorney fees incurred after the first judgment entered. The attorney fee awarded by the court matched exactly the request made by Mercantile's counsel.

---

[2] The court ruled that Mercantile was entitled to postjudgment expenses of $81,301.66; defendants have not challenged this ruling other than with respect to a property tax payment, which we discuss below.

## II. THE SCOPE OF THE REMAND

Capital Partners first contends that the circuit court exceeded the scope of this Court's remand order by awarding Mercantile postjudgment attorney fees, and thereby violated the law of the case doctrine.[3]

Whether the trial court followed this Court's rulings on remand presents a question subject to de novo review. *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013). "Similarly, this Court reviews de novo the determination whether the law-of-the-case doctrine applies and to what extent it applies." *Id*. (quotation marks and citation omitted). The law-of-the-case doctrine binds a trial court to an appellate court's ruling on a particular issue. *Id*. "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (quotation marks and citation omitted; alteration in original). The doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

In its first appeal, Capital Partners contended that the case-evaluation award resolved all of the parties' claims and urged this Court to remand so that payments made and rents received could be credited against the September 2011 judgment amount. By virtue of the case evaluation, Capital Partners insisted, the original judgment included Mercantile's attorney fees. This Court disagreed, holding that the case-evaluation award was infirm from the outset and therefore a nullity. We remanded with the specific instruction to "order judgment sufficient to discharge the debt, plus costs." *Mercantile Bank I*, 305 Mich App at 228.

The attorney-fee issue presented in the first appeal was narrow and discrete: whether the case-evaluation award inherently included attorney fees. Capital Partners contended that the award represented a total amount due, and that its acceptance of the award ended the case. The amount of the fee award (at that time, $90,191.95) was not contested. We held that the case-evaluation award did not resolve the parties' claims and that Capital Partners' argument that the fee award "required them to pay some attorney fees twice" lacked merit. *Id*. at 228-229. Our opinion simply did not decide, implicitly or explicitly, that attorney fees were off the table during the remand proceedings.

---

[3] Capital Partners raised this issue in the circuit court, but the court's opinion and order did not address it directly.

Rather, the remand order contemplated that judgment would enter "in the amount sufficient to discharge the debt, plus costs."[4] Because under the parties' contracts attorney fees are part and parcel of the debt, the circuit court did not err by conducting an evidentiary hearing to determine the amount of attorney fees owed to Mercantile.

The parties' mortgage expressly provides that Mercantile may recover reasonable attorney fees incurred as a result of attempting to collect its debt, and that such fees are incorporated into the overall indebtedness. The mortgage provides, in pertinent part, as follows:

> Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover its reasonable attorneys' fees. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

This unambiguous contractual language permits Mercantile to recover "reasonable attorney[] fee[s]" if it sues to enforce the debt. Under the contract, those fees "become a part of the Indebtedness payable on demand[.]" The circuit court accurately observed that where necessary "for the protection of [Mercantile's] interest or the enforcement of its rights," the mortgage entitles Mercantile to recover its reasonable attorney fees incurred. Because the mortgage expressly provides that reasonable attorney fees are subsumed into the overall indebtedness, the circuit court correctly rebuffed defendants' claim that consideration of an attorney fee exceeded the scope of this Court's remand instructions.

## III. THE PROPRIETY OF ANY ATTORNEY FEE AWARD

Capital Partners next contends that Mercantile is not entitled to any attorney fees because the bank's improper pursuit of an inflated judgment caused the postjudgment proceedings, compelling an appeal and forcing Capital Partners into bankruptcy. Had a judgment with the credits been entered in September 2011, Capital Partners argues, defendants would have paid it,

---

[4] Capital Partners also contends that the circuit court erroneously construed the word "costs" as attorney fees. We find nothing in the circuit court's opinion that supports this contention.

avoiding both the bankruptcy and the prolonged postjudgment circuit court proceedings. The circuit court rejected this argument as follows:

> Defendants argue that Mercantile Bank is not entitled to attorney fees after the September 23, 2011 Order granting Summary Disposition and that the attorney fee was not reasonable because Mercantile Bank forced Defendants to file bankruptcy. However, Defendants' arguments are not supported by the record or by the contract. The Court finds that it was necessary for Mercantile Bank to pursue its claim in the bankruptcy proceedings and therefore the attorney fee was reasonable and necessary to protect its interest in the subject property.

Despite the brevity of the circuit court's analysis, we agree that the parties' contract and the record permit Mercantile to recover attorney fees for its efforts in defending the judgment, its interests on appeal, and its position in the bankruptcy court.

As the mortgage excerpt quoted above reflects, the parties agreed that Mercantile could initiate suit to enforce the mortgage terms and would be "entitled to recover its reasonable attorneys' fees" for this effort. The mortgage also provides that Mercantile could recover all "reasonable expenses . . . that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights[.]" The mortgage further states that "reasonable expenses" include "reasonable attorney fees."

The promissory note executed by Capital Partners contains this separate attorney fee paragraph:

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

And the parties' business loan agreement states in relevant part:

> Attorneys' Fees; Expenses:. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

All three contracts permit Mercantile to recover reasonable attorney fees; the promissory note and the business loan agreement specifically allow for fees "for bankruptcy proceedings." Even absent this language, however, we would hold that the mortgage entitles Mercantile to recover attorney fees that it judges necessary to protect its interests or enforce its rights. Generically, the attorney fees incurred after September 23, 2011, fall within that ambit.

Capital Partners' assertion that the case would have resolved had the judgment reflected the credits may be correct. But it ignores the elephant in the room during the months the parties wrangled over the judgment language: case-evaluation attorney fees. If a judgment had entered for an amount at least 10% less than the case-evaluation award, the record substantiates that Capital Partners would have sought case-evaluation sanctions, including attorney fees. This fact was not lost on counsel, the two judges who managed the cases before and during the appeal, and it is not lost on this Court. At various times, counsel for both sides admitted that a judgment amount including the credits would trigger a motion for case-evaluation attorney fees.

Given this potential consequence, Mercantile's decision to oppose a reduced judgment aligned with its right to protect its interest and enforce its rights. This Court ultimately determined that the parties' fight about the case-evaluation sanctions led to a dead end, as the case-evaluation award did not comply with the rules. We further held that Mercantile was wrong about the credits. But these holdings do not alter the fact that in vigorously defending the undiscounted judgment, Mercantile's counsel successfully shielded the bank from a possible award of attorney fees. Mercantile's actions were logical. They were legally supportable for another reason, too.

At the evidentiary hearing, Gates pointed out that in his view, defendants wanted "to manipulate the system" by paying enough toward the mortgage to result in a judgment that would trigger case-evaluation sanctions. "If that were allowed," Gates declared, "the games that would be played in this court and every other court across the state would be phenomenal. Everyone who wanted to improve their position or cause the other party to [be] forced with case evaluation sanctions would come in after the accept and rejection time frame and quickly make a payment to drive the number." We take no position on whether defendants actually *intended* their payment to have the effect Gates's described; the question is whether Gates's hypothesized scenario justified Mercantile's efforts to keep the judgment high. We think it does. Advocating a judgment for the full amount due when summary disposition was granted may have proven incorrect, but the argument protected Mercantile from case-evaluation sanctions. The circuit court did not err by rejecting this aspect of defendants' attorney-fee argument.

IV. THE REASONABLENESS OF THE $488,885.03 ATTORNEY FEE AWARD

We turn to the most vexing issue in this case: whether the circuit court abused its discretion by awarding the full amount of the fees requested by Mercantile without explaining why the rates charged by most of the lawyers who worked on the case and the hours they spent were reasonable. A court awarding attorney fees is required to "show its work," at least to the extent that an appellate court is capable of reviewing any findings for clear error and the its ultimate conclusions for an abuse of discretion. Consistent with our Supreme Court's directives in *Smith*, 481 Mich 519, and *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 864 NW2d 257 (2016), a trial court must make brief but specific findings as to the rate and the number of

hours it determines to be reasonable. While we sympathize with the difficulties trial courts face in unraveling complex attorney fee disputes, we are not permitted to intuit findings that the trial court failed to make. Because the circuit court's opinion lacks such findings other than as to attorney Gates's hourly rate, we are unable to undertake even a deferential review, and must remand for further proceedings.

A. THE LEGAL FRAMEWORK

Two cases guide our analysis: *Smith* and *Pirgu*. In *Smith*, the attorney-fee dispute arose from a circuit court's award of case-evaluation sanctions including reasonable attorney fees under MCR 2.403(O). *Pirgu* concerns the calculation of a reasonable attorney fee in first-party no-fault cases under MCL 500.3148(1). Although this case involves contractual attorney fees, *Smith* and *Pirgu* offer helpful starting points for determining the reasonableness of a fee award.

The plurality opinion in *Smith* advances several holdings relevant to our inquiry.[5] *Smith*, 481 Mich at 528-529 (TAYLOR, C.J.), prefaces its analysis by reciting a foundational and undisputed principal: "the burden of proving the reasonableness of the requested fees rests with the party requesting them." Later in the plurality opinion, Chief Justice Taylor again "emphasize[d] that 'the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyer of reasonably comparable skill, experience and reputation.' " *Id*. at 531, quoting *Blum v Stenson*, 465 US 886, 895 n 11; 104 S Ct 1541; 79 L Ed 2d 891 (1984).

A court assessing a fee request should begin by determining "the fee customarily charged in the locality for similar legal services" by using "reliable surveys or other credible evidence of the legal market." *Smith*, 481 Mich at 530-531. That reasonable hourly fee "should be multiplied by the reasonable number of hours expended in the case." *Id*. at 531. The resulting baseline figure is "the *starting point* for calculating a reasonable attorney fee." *Id*. (emphasis added).

The product of the rate times the hours in hand, *Smith* instructs, the court then should consider the factors listed in *Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), and MRPC 1.5(a) "to determine whether an up or down adjustment is appropriate." *Smith*, 481 Mich at 531. The plurality opinion expresses that two of these factors—factor 3 under *Wood* ("the amount in question and the results achieved") and factor 4 under MRPC 1.5(a) ("the amount involved and the results obtained")—are not relevant in a fee determination under MCR 2.403(O), as their application would undermine the goals of the case evaluation process. *Smtih*, 481 Mich at 534 n 20. The Court added an important admonition: "[I]n order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." *Id*. at 531.

---

[5] The *Smith* plurality opinion was signed by Chief Justice Taylor and Justice Young. Justices Corrigan and Markman signed a concurring opinion.

-11-

*Smith* not only sets out the general rules governing attorney-fee awards; it show by example how the rules should be applied.

*Smith* was a dental malpractice case. The plaintiff accepted a $50,000 case evaluation award and defendants rejected it. The jury returned an adjusted verdict of $46,631.18, exposing the defendants to case-evaluation sanctions. *Id.* at 522-523. The plaintiff sought $68,706.50 in attorney fees for the four attorneys who spent a total of 181 hours working on the case during the relevant post-case-evaluation period. The hourly rates requested ranged from $450 for the lead lawyer to $275 for the associates. *Id.* at 523.

The trial court approved the hourly rates with an explanation that relied heavily on the fact that the lead lawyer had previously been awarded $450 per hour in other cases, but the court made no findings related to the other lawyers. The court also approved the total amount sought, stating that it was reasonable. *Id.* at 524-525. This Court affirmed. *Id.* at 525. The Supreme Court reversed, however, holding that the trial court's determination regarding the lead lawyer's hourly rate was unsupported by evidence and did not reflect any consideration of whether the fee in the lead lawyer's previous awards "might have been justified by the particular circumstances of the earlier cases, such as the complexity and the skill required." *Id.* at 533. "Moreover," the plurality continued, "the trial court erred when it conclusorily stated" that lead counsel had tried the case "in a 'professional manner,' without further explanation, because this is something all attorneys should be expected to do." *Id.* The Court instructed that on remand "the court should be careful to perform a separate analysis with reference to the other three attorneys, considering both the hourly rates and the number of hours reasonably expended, and should consider whether it was reasonable for plaintiff's firm to have two lawyers 'on the clock' during the trial." *Id.* at 534.

In a concurring opinion, Justice Corrigan expressed that *Wood* factor 3 and MRPC factor 4 remain relevant to an attorney fee calculation under the case evaluation rule. *Id.* at 539-540 (CORRIGAN, J., concurring). Judge Corrigan highlighted that when evaluating the results obtained under those two factors, a court should also "consider whether fees may be disproportionate to a damages award as part of the overall analysis." *Id.* at 543.

In *Pirgu*, this Court had held that the *Smith* framework did not apply to a statutory attorney-fee award. *Pirgu v United States Auto Ass'n*, unpublished opinion per curium of the Court of Appeals, issued December 16, 2014 (Docket No. 314523). The Supreme Court reversed, holding "that the *Smith* framework—as described in Justice CORRIGAN's concurring opinion and as modified herein—applies to attorney fee determinations under" the no-fault act. *Pirgu*, 499 Mich at 271. The "modification" adopted in *Pirgu* was a distillation of the *Wood* and MRPC factors into one nonexclusive list:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id*. at 282.]

Notably, the Supreme Court reinserted the factor omitted by the *Smith* plurality—the results obtained. The Court explained that "the results obtained are relevant to determining the reasonable value of legal services," and "are indicative of the exercise of skill and judgment on the part of the attorney." *Id*. at 280. "Accordingly," the Court concluded, "a trial court must consider both of these factors when making adjustments to the baseline fee award." *Id*.

*Pirgu* reinforced that a trial court must start "its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services," and must then multiply that number "by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. at 281. And the Court reiterated that "to facilitate appellate review, the trial court should briefly discuss each of the [distilled] factors . . . on the record and justify the relevance and use of any additional factors." *Id* at 282.

The application of these rules in *Pirgu* required a new calculation of attorney fees, as the trial court failed to begin its analysis "by multiplying a reasonable hourly rate by the reasonable number of hours expended," and improperly relied on only one factor—the amount sought and results achieved"—rather than discussing briefly any of the other factors. These errors, the Supreme Court held, "necessarily" constituted an abuse of discretion. *Id*. at 282-283.

## B. THE FRAMEWORK, APPLIED

Our evaluation of the circuit court's attorney-fee award is for an abuse of discretion. *Id*. at 274. "A court necessarily abuses its discretion when it makes an error of law." *Id*.

We begin by recapitulating the circuit court's factual findings regarding the amount of the attorney-fee award:

Plaintiff request[s] attorney fees in the amount of $488,885.03 from Sept[ember] 2011 to Aug[ust] 2015 at a rate charged of $250 and $300 per hour. In *Smith* . . ., 481 Mich 519 . . ., the Michigan Supreme Court delineated the proper approach to calculating a reasonable attorney[] fee for purposes of case evaluation sanctions. The Court held that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar services. In determining "the fee customarily charged in the locality for similar legal services[,]" the trial courts have routinely relied on the data contained in surveys

-13-

such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan. . . .

Other factors to be considered when determining "reasonable" attorney[] fee[s] were listed in *Wood* . . ., 413 Mich [at] 588 . . . *Wood* listed the following six factors that should be considered in determining a reasonable attorney fee: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. *Id*.

Based upon a review of the 2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report from the Michigan State Bar and the testimony of Attorney Floyd Gates and Mr. Justin Karl, Senior Vice President of Mercantile Bank, the Court finds the attorney rate of $250 and $300 [an hour] to be a reasonable rate[] based upon the experience of Attorney Gates, his law firm size and location and considering the factors set forth in MRPC 1.5(a) and *Wood* . . . as this present case involved contentious and complex issues of law including business, property, and bankruptcy law and Attorney Gates['s] extensive history of work with the Plaintiff.

We have explained that the circuit court did not abuse its discretion or commit an error of law by awarding an attorney fee in this case. The issue remaining is the *amount* of the award. On first blush, the amount of the award is troubling for two reasons. First, it is more than double the amount of the indebtedness, suggesting—but by no means proving—disproportionality. Second, the circuit court uncritically awarded the full amount Mercantile requested. While the reasonable hourly rate of the attorneys unmentioned in the court's opinion may be $300 or $250 per hour, the court's analysis is woefully brief. Similarly, the court accepted Mercantile's representations concerning the time expended without analyzing this issue, or responding to the concerns raised by defendants regarding certain charges. Further, although the court listed the *Wood* factors, it failed to discuss them. Simply put, the circuit court failed to follow the attorney-fee calculation mechanism described in *Smith* and *Pirgu*, and has given us nothing that we can adequately review.

In fixing Gates's reasonable rate at $300 per hour the circuit court relied on Gates's experience, the size of his law firm and its location, and that the case involved "contentious and complex issues of law including business, property, and bankruptcy law." We are not sure why the size of Gates's law firm should make any difference, and the circuit court has not told us. The other facts cited provide some support for the rate selected, although we question the legal complexity of the underlying issues. There is no denying that the case was contentious from start to finish. Conspicuously absent from the circuit court's opinion, however, is any finding that Gates's fee was "similar to that customarily charged in the locality for similar legal services[.]" *Smith*, 481 Mich at 528. This number "may differ from the *actual* fee charged or the highest rate the attorney might otherwise command." *Id*. (emphasis in original).

The circuit court awarded Gates (and the other attorneys) the amount they charged, and made no findings regarding the key fact identified in *Smith*: the prevailing fee in the relevant legal community for similar work. Mercantile produced evidence of these numbers by introducing the 2014 Economics of Law Practice Survey. But defendants took issue with that data through Rooney's testimony. Although the circuit court concluded that Gates's fee was "reasonable," it did so without any reference to the fee customarily charged under similar circumstances, and never articulated that the fee it awarded corresponded with the customary fee for similar work. That shortcut contravenes *Smith*. Were we empowered to find facts, we could attempt to come up with a number, or simply affirm the circuit court. But that is not our role, and we decline to take the path of least resistance.

On remand, the circuit court must consider the evidence of record in determining a reasonable fee, consistent with the parameters set forth in *Smith*, for Gates and all of the other attorneys for whom Mercantile seeks fees. See *Augustine v Allstate Ins Co*, 292 Mich App 408, 428; 807 NW2d 77 (2011). As Mercantile bore the burden of establishing the reasonableness of the rates of its counsel, holes in the record regarding the attorneys other than Gates and Fazio should be taken into account. Alternatively, the court may decide to reopen the proofs; we leave that decision to the circuit court's discretion.

The record is similarly empty of findings related to the reasonableness of the number of hours expended by Mercantile's lawyers. Our brief perusal of the billing records suggests that at least some of the concerns raised by Capital Partners may have merit. For example, a number of billings state that time was expended for "attention to detail." As Rooney pointed out, this phrase is unexplained, and we would expect that in completing any legal task, a competent attorney would be paying attention to the details. Do such entries mean that extra time was spent? If so, doing what, and was such time compensable under the parties' contracts? Rooney also point out that Mercantile's counsel charged for 40 hours of work to complete a seven or eight page motion. Again, it was Mercantile's responsibility to explain these billing entries, and the absence of any evidence on this subject may be held against Mercantile. The other discrepancies in the billings identified by defendants remain unexplained and factually unresolved, as do the questions of whether it was appropriate for Mercantile to seek substantial fees ($75,000, according to Capital Partners) for the time expended by its counsel in pursuing attorney fees, and the legitimacy of Mercantile's charge for a property tax payment that Capital Partners claimed to have made. On remand, the circuit court should determine whether the fees within these categories, and the tax payment, were necessary to protect Mercantile's interest or enforce its rights.

Finally, the circuit court failed to make any findings relevant to the *Wood* or *Pirgu* factors. The court's findings in this regard need not be lengthy, but they must appear in the record. The circuit court may have misapprehended the role of these factors in the determination of a reasonable fee. To clarify, after ascertaining a reasonable hourly rate and a reasonable number of hours expended, the court must then consider the totality of the circumstances, including the *Wood* or *Pirgu* factors, to determine a reasonable rate. See *Smith*, 481 Mich at 528-529.

We affirm the circuit court's ruling that an award of attorney fees does not exceed the scope of the remand or contravene the law of the case doctrine. We further affirm the circuit

court's determination that Mercantile is entitled to an award of reasonable attorney fees and expenses for the bankruptcy and other proceedings to the extent that such fees are consistent with the contractual requirements. We vacate the circuit court's attorney fee determination and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, we decline to award costs under MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher