*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA L. WOODS,

    Plaintiff-Appellee,

v

TIMOTHY P. WOODS,

    Defendant-Appellant.

UNPUBLISHED
June 4, 2019

No. 341204
Livingston Circuit Court
Family Division
LC No. 17-051831-DM

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right a judgment of divorce entered following a bench trial. Defendant contends that he had inadequate notice of trial, that the trial court's behavior during trial deprived him of due process, that the court erred in its custody arrangement, and that the trial judge should be removed from the case. We affirm.

On September 8, 2017, plaintiff and defendant reached a tentative settlement of the divorce action. Defendant, however, reconsidered, and on or about September 10, 2017, he decided to forego the settlement and proceed to a trial. Trial commenced on September 26, 2017, and concluded on its second day, October 4, 2017. The trial court found that the child-custody best-interests factors, see MCL 722.23, favored plaintiff and therefore adopted her proposed custody and parenting-time arrangement. The court ordered joint legal custody and joint physical custody of the parties' twin girls, with plaintiff receiving 197 overnights each year and defendant receiving 168 overnights each year.

## I. DUE PROCESS

Defendant first contends that he did not receive due process of law during the proceedings because he had inadequate notice of the commencement of trial, in violation of MCR 2.501, and the trial court exhibited behavior during trial that raised questions of fairness. "Whether proceedings complied with a party's right to due process presents a question of constitutional law that [this Court] review[s] de novo." *In re Rood*, 483 Mich 73, 91; 763 NW2d

587 (2009) (opinion by CORRIGAN, J.). This Court also reviews de novo the interpretation and application of court rules. *Mercantile Bank Mtg Co, LLC v NGPCP/BRYS Centre, LLC*, 305 Mich App 215, 223; 852 NW2d 210 (2014). Defendant did not argue below that the trial court's behavior during trial deprived him of due process therefore this aspect of the issue is unpreserved. We review unpreserved issues for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

MCR 2.501(C) states:

**Notice of Trial.** Attorneys and parties must be given 28 days' notice of trial assignments, unless

(1) a rule or statute provides otherwise as to a particular type of action,

(2) the adjournment is of a previously scheduled trial, or

(3) the court otherwise directs for good cause.

Notice may be given orally if the party is before the court when the matter is scheduled, or by mailing or delivering copies of the notice or calendar to attorneys of record and to any party who appears on his or her own behalf.

Defendant contends that the court violated this rule because the court cited no good cause for waiving the 28-day notice period and instead ordered that trial begin on the afternoon of September 26, 2017, the same day that the court denied plaintiff's motion to enforce the previously-negotiated settlement. Defendant contends that the trial court gave only a "few hours" of notice and that this did not comport with due process.

However, MCR 2.501 also states:

**(A) Scheduling Conferences or Trial.**

(1) Unless the further processing of the action is already governed by a scheduling order under MCR 2.401(B)(2), the court shall

(a) schedule a pretrial conference under MCR 2.401,

(b) schedule the action for an alternative dispute resolution process,

(c) schedule the action for trial, or

(d) enter another appropriate order to facilitate preparation of the action for trial.

(2) A court may adopt a trial calendar or other method for scheduling trials without the request of a party.

On March 15, 2017, the very day that plaintiff filed her initial complaint, the trial court issued a scheduling order listing the following events and corresponding dates: (1) termination of

discovery on August 11, 2017; (2) a pretrial conference on June 19, 2017; (3) a "final pretrial" on September 11, 2017; and (4) trial on September 20, 2017. The scheduling order states: "PLAINTIFF SHALL SERVE a copy of this Order upon Defendant when serving the Summons and Complaint. Proof of Service shall be filed with the Court Clerk." The record shows that defendant was served on March 20, 2017, more than 28 days before the trial actually commenced on September 26, 2017.

Defendant contends that because the parties had tentatively reached a settlement on September 8, 2017, after which plaintiff attempted to obtain entry of the negotiated judgment and set her motion for a hearing on September 26, 2017, the September 20, 2017 date should not have been honored as the "date set for trial."[1] Defendant cites a September 8, 2017 entry on the register of actions in support of his appellate argument. This entry states, in relevant part: "CASE SETTLED PER ATTY OLSON; ORDER TO SHOW CAUSE ISSUED; REMOVE NEXT EVENT: 09/20/17 NON-JURY TRIAL."[2] Defendant argues that because the "scheduled trial date" was "remov[ed]" as evidenced by the register of actions, he had inadequate notice of trial. But this entry in the register of actions clearly tied the removal of trial to the apparent settlement. Defendant, as the person rejecting the settlement, surely knew that the settlement was not, in fact, going to take place and that a trial would therefore be necessary. Moreover, since the commencement of the case, the trial date had been set at September 20, 2017. Under the circumstances, defendant had adequate notice of trial, and the trial court complied with MCR 2.501 by issuing its initial scheduling order.[3]

Defendant did change attorneys between the rejection of the settlement and the start of trial. Defendant does not make an explicit argument that his change of attorneys somehow negated the notice period but instead merely states that the trial court ordered the commencement of trial "despite . . . the objections of Mr. Woods's attorney who substituted in that day."

---

[1] Defendant also argues that, at the time of the commencement of trial on September 26, 2017, the case was only six months old, and therefore a delayed, later trial would still have comported with guidelines set forth in Michigan Supreme Court Administrative Order No. 2013-12, 495 Mich cxx (2013), which states that 85% of divorce cases involving children should be adjudicated within 301 days of the filing of the case. But whether a later trial would comport with Supreme Court guidelines is a separate question from whether defendant obtained adequate notice of trial under the court rules. In other words, if defendant had adequate notice, the trial court had no reason to delay trial.

[2] Plaintiff's attorney stated on September 26 that on September 8, he and defendant's then-attorney concurred that an agreement had been reached and that, as a result of their discussions, the court was called in order to obtain a show-cause date for entry of the then-agreed-upon judgment.

[3] In other words, defendant had the requisite 28 days' notice under MCR 2.501(C). Alternatively, given the unique circumstances of the case (a tentative settlement that caused the trial date to be "removed" but that was eventually rejected), the trial court had "good cause" under MCR 2.501(C)(3) for ordering trial to commence on September 26.

Defendant's new attorney, Ellis B. Freatman III, did not at any point indicate that he had not had access to the March 15, 2017 scheduling order on which the September 20 trial date was listed.[4]

Defendant cites *Klco v Dynamic Training Corp*, 192 Mich App 39, 42; 480 NW2d 596 (1991), in support of his due-process argument on appeal. In that case, the Court stated: "Analysis of what process is due in a particular proceeding depends on the nature of the proceeding and the interest affected by it. Generally, due process in civil cases requires notice of the nature of the proceeding, an opportunity to be heard in a meaningful time and manner, and an impartial decision maker." *Id*. (citations omitted). Under all the circumstances and the "nature of the proceeding[s]" here, defendant was afforded due process. He and his prior attorney knew that trial was scheduled for September 20, in accordance with the timeline prescribed by MCR 2.501(C). Defendant made the choices to forgo settlement and hire new counsel. Both he and new counsel were aware of the issues to be resolved and witnesses to be called at trial.

Defendant further contends that the trial court denied him due process because it was not impartial or fair. See *Klco*, 192 Mich App at 42; see also *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995). He cites several examples of what he characterizes as inappropriate behavior on the part of the trial court.

First, he cites the court's treatment of Freatman's attempt to inquire into plaintiff's use of antidepressants. Freatman inquired about it, and the court said: "I'm just gonna tell you I don't care. I, I don't care if someone has to take antidepressant or antianxiety [sic]. I give them a lot of credit for acknowledging it, that they might need that and getting the help. You can ask her." Plaintiff stated: "After the death of my mother yes I had [an] increased amount of anxiety that I did seek help for. And yes, I used [an antidepressant]." Freatman asked when she started taking it, and the court interjected: "That's enough on that. That's enough. She's prescribed medication. Big deal."

We do not view this interchange as unfair or partial. The trial court merely limited testimony on a treated condition. Significantly, the court did *not* give any indication that it was foreclosing questions regarding whether plaintiff had *untreated* mental-health issues, which could indeed have had a bearing on the outcome of the proceedings.

Defendant next cites the following exchange:

> *MR. FREATMAN.* Are you all right your Honor?

---

[4] We note that defendant's prior attorney, William H. Hougaboom, stated on September 26 that defendant told him several weeks prior that he had hired a different attorney, and plaintiff's attorney stated that on or about September 11, he learned that Hougaboom was going to be replaced as defendant's attorney. We further note that when trial recommenced on October 4, Freatman deftly cross-examined plaintiff and acknowledged that he had no intention of presenting any witnesses other than defendant.

> *THE COURT.* I'm okay. Thanks. Just sometimes I—it's been a long day. I start to almost hyperventilate so I take—and someone recently said to me—because I was doing that and they said why are you mad at me? And I said I'm not mad. And it's just—it's really just my way of relaxing myself. But thank you.
>
> *MR. FREATMAN.* It just looked like heartburn to me.
>
> *THE COURT.* No.
>
> *MR OLSON.* Mr. Freatman may—
>
> *THE COURT.* A very emotional day.

Again, we do not view this exchange as evidencing unfairness or partiality. The court, after apparently making some sort of audible breath, explained to Freatman that it was "not mad" and even thanked Freatman twice for asking about the court's well-being. The court referred to an "emotional day" but did not indicate that it was the divorce trial, which was not particularly rancorous as far as divorce trials go, that was the cause of the emotion.[5]

Defendant next takes issue with the court's saying, on October 4, "I'm doing the court recorder's job, I'm getting emails from my chief judge, and I'm trying to pay attention here." The trial court made this statement after reminding Freatman that he had not yet asked for an exhibit to be admitted, after which Freatman explained, "I'm not there yet." The court replied, "Okay. I just want to make sure I didn't miss something." Once again, this exchange does not evidence bias or unfairness. The court expressed that it had a lot of things to deal with that day but that it was taking care to be "sure" that it did not "miss something." And the court's behavior and rulings indicated that it was, in fact, paying close attention to the proceedings.

Defendant next takes issue with the trial court's statements that defendant should have been making more money in his career and that he should have been "working instead of wakeboarding." Defendant testified that he earned about $33,000 a year for the past few years and worked approximately 35 hours a week. Plaintiff's attorney, at one point, inquired about whether defendant had ever thought about getting a job that paid more. Defendant replied that he liked his job and was good at it, but probably was not good at bidding for his contract work. He admitted that, on a Facebook post, he stated that he had 10 weeks of work lined up but would "rather be wakeboarding." Plaintiff's attorney inquired without objection as to why, in 18 years, he had not learned how to earn more money, given that he has children to support, and defendant replied, "I don't know sir. I work hard and I make as much as I can." The court later in making its findings, stated: "But he can make more, yeah he can. . . . Hopefully he's gonna realize he needs to get out there and you know be working instead of wakeboarding." We agree that the

---

[5] The proceedings on September 26 commenced at 11:33 a.m.; the court could indeed have heard other cases or dealt with other matters beforehand, or during the break between deciding plaintiff's motion and commencing trial.

relative earnings of the parties was largely irrelevant to the one contested issue of custody. However, the unobjected questioning and the limited reference to the testimony in the court's ruling do not demonstrate a lack of impartiality such that there is a due process implication.

Defendant lastly takes issue with the trial court's statement regarding his marijuana usage, arguing that the court "editorialized on the effects of marijuana despite no expert testimony." The court stated as follows when discussing factor f of the best-interests factors:

> You know you say you could stop immediately. You went to a medical marijuana doctor. The kind if you pay them enough money they give you the certificate. Simple as that. Medical—most medical doctors won't do it because there aren't enough studies that show it really does help. You've been smoking for years and years and years and it does adjust people's personalities. It—and brains. It makes people slower, more lazy, and it calms people. And when you go off it it can make people pretty darn moody and angry. It's not that easy. It is addictive. So that goes in her favor.

In making this comment, the court did indeed seem to be, as argued by defendant, relying on facts not in evidence. There was no trial testimony about the effects of marijuana nor is there such a consensus of the effects to warrant "judicial notice." In addition, it seems unfair that the court penalized defendant for attempting to comply with the then-existing law by obtaining a medical-marijuana card.

The pertinent question, however, is whether this "editorializing" about marijuana caused a deprivation of due process. In *Dobrzenski*, 208 Mich App at 515, the case cited by defendant, this Court found a denial of due process because

> the proceedings got away from the court and rambled out of control. Issues were tried piecemeal, tossed back and forth between referee and judge, and complicated with multiple show cause hearings and motion hearings using four different court reporters, double reversal of findings by the court, twenty-three adjournments, lost records, substitutions of counsel, and partial hearings in propria persona. The record defies review.

This Court stated:

> In order to accord the parties rudimentary due process, we order bifurcation of the proceedings, reversing all aspects of the property settlement award, which constitutes the heart of the dispute on appeal, while affirming and leaving intact the judgment of divorce, the order of custody, and the order of support. [*Id*. at 515-516.]

The present case is not comparable to *Dobrzenski*. The proceedings were tried in a calm and organized fashion, records were not lost, the parties were represented by counsel, the court did not reverse its findings, and there were not numerous "irregularities." See *id*. at 516. While the court did make some improper "editorializing" comments regarding marijuana use, these comments are more appropriately addressed in the context of analyzing the court's ultimate

-6-

decision on the matters being tried; in other words, the comments *are* subject to review on appeal, but they did *not* render the entire proceedings void based on a lack of due process.

## II. CUSTODY ARRANGEMENT

Defendant argues that the trial court, after first properly finding that an established custodial environment existed with both parents, changed this established custodial environment without clear and convincing evidence that it was in the children's best interests to do so. Defendant also takes issue with various specific statements and findings made by the trial court.

As stated in *Lieberman v Orr*, 319 Mich App 68, 76-77; 900 NW2d 130 (2017):

> All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue.

> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law.

> The applicable burden of proof presents a question of law that is reviewed de novo on appeal. [Quotation marks and citations omitted.]

Under the great-weight-of-the-evidence standard, "we affirm a trial court's findings unless the evidence clearly preponderates in the opposite direction." *Kessler v Kessler*, 295 Mich App 54, 63; 811 NW2d 39 (2011) (quotation marks and citation omitted).

## A. ESTABLISHED CUSTODIAL ENVIRONMENT

When a court is deciding an initial custody schedule based on the filing of a divorce action, it must first determine the existence of an established custodial environment. *Kessler*, 295 Mich App at 56. The court found that the children had an established custodial environment with both parents. This finding was amply supported by the testimony at trial that both defendant and plaintiff were active, involved parents. As stated in *Berger v Berger*, 277 Mich App 700, 706-707; 747 NW2d 336 (2008):

> An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. . . . An established custodial environment may exist with both parents where a child looks to both the

mother and the father for guidance, disciple, the necessities of life, and parental comfort.

See also MCL 722.27(1)(c), which states: "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."

A court may not change the established custodial environment of a child unless there exists clear and convincing evidence that such change is in the best interests of the child. *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018). On the other hand, "[i]f the change [in custodial arrangements] does not alter the established custodial environment, then the proponent of the change need only demonstrate by a preponderance of the evidence that the requested change is in the children's best interests." *Id*. at 362.

Defendant contends that the "clear and convincing" standard applied in this case because the court altered the children's established custodial environment. However, "[a]n important decision affecting a child's welfare does not necessarily mean the established custodial environment has been modified." *Id*. at 361. An established custodial environment can exist in more than one home, and "[t]here is only a change to the established custodial environment if parenting-time adjustments change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort." *Id*. (Quotation marks and citation omitted). The judgment in the present case specifically stated that the parties "*shall share joint legal custody and joint physical custody* of the minor children until the children reach the age of eighteen years or until further Order of the [c]ourt." It set forth various duties of the parties, such as: "Each party will decide all routine matter[s] concerning the children's welfare while the children are in his or her possession." It provided that "Plaintiff/Mother shall have 197 overnights and Defendant/Father shall have 168 overnights per year," and it set forth the schedule for these overnights. Defendant, then, retained a substantial number of overnights with the children and there is, quite simply, no evidence from the record that the court's order changed the children's established custodial environment with both parents. Neither is there evidence for defendant's contention that the court awarded plaintiff primary physical custody. Defendant's argument may be better understood to be an argument that the trial court should have awarded an even, 50/50 split of physical custody instead of the 197/168 split ordered by the court. To the extent the court's order could be deemed to have altered the physical-custody arrangement in place while the children resided with both parties in the marital home (but without changing the established custodial environment), a preponderance of the evidence was required to support that alteration. See, generally, *Marik*, 325 Mich App at 361-362.

MCL 722.27(1) provides that a circuit court, when faced with a child-custody dispute, may award custody and parenting time in accordance with the best interests of the child. The trial court concluded that only four best-interests factors were in play: factors b, c, f, and j. Defendant fails to challenge the trial court's best interest findings on appeal. His analysis is two sentences; one, that the court relied on facts not in evidence, and two, that the court inaccurately recalled testimony. There is no citation to the specific best interest factors or an application of any of the statements he takes issue with to a particular factor. The record establishes that both

parents were fit and that the custodial environment established with both parties remained unchanged by the custody arrangement. Defendant's qualm with the modest imbalance of days is about parenting time and not custody. We find no basis for disturbing the court's custody order.

## III. JUDICIAL DISQUALIFICATION

Defendant argues that because the court improperly changed the established custodial environment of the children and denied defendant his due-process rights, this case should be assigned to a different judge for any further proceedings that might arise.

The issue of disqualification is moot because this Court cannot render meaningful relief, given that the case has *already* been assigned to a different judge. See, generally, *BP7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) (discussing mootness). In addition, there is no "issue of public significance presented that would compel [the Court] to decide the moot issue presented." *Id*.

At any rate, defendant's appellate argument does not warrant relief. Defendant recites various standards for disqualification of a judge, but in terms of applying the standards to the present case, defendant states only the following: "As previously discussed, the trial court wholly improperly awarded physical custody to Ms. Woods despite an established custodial environment of co-parenting and denied Mr. Woods his due process rights." Defendant does not, then, make any new allegations of bias but merely relies on arguments made earlier, in prior sections of his brief. As noted in sections I and II of this opinion, the court did *not* err in its custody order and did not deny defendant due process. As such, the premise of defendant's argument is faulty and he has not established any entitlement to relief. He contends that this case is comparable to *Dobrzenski*, 208 Mich App at 515, wherein the Court remanded the case to a different judge. As discussed in section I, however, *Dobrzenski* and the present case are not comparable.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra